STATE OF NORTH CAROLINA v. JESSE LEE THOMAS

No. 218A90

(Filed 25 June 1992)

1. **Constitutional Law § 283 (NCI4th) — murder — appearance without counsel — error**

The trial court erred in a murder prosecution by allowing defendant to represent himself where defendant's repeated requests to appear as "leading attorney" at the head of "assistant" counsel did not amount to clear and unequivocal expressions of a desire to proceed *pro se*. Waiver of the right to counsel and election to proceed *pro se* must be expressed "clearly and unequivocally," and the trial court must then determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel. The inquiry required by N.C.G.S. § 15A-1242 satisfies constitutional requirements.

Am Jur 2d, Criminal Law § 768.

Accused's right to represent himself in state criminal proceeding — modern state cases. 98 ALR3d 13.

**2. Criminal Law § 1337 (NCI4th) — murder — aggravating factor — previous conviction — criminal record form — not sufficiently reliable**

In a murder prosecution reversed on other grounds, the evidence was not sufficient to support the sole aggravating circumstance of a previous conviction of a felony involving the use or threat of violence to the person where the evidence consisted solely of a form document issued by the Administrative Office of the Courts entitled "Criminal Record Check" which expressly disclaimed reliability and omitted substantial identification information. N.C.G.S. § 15A-2000(e)(3).

**Am Jur 2d, Criminal Law § 599; Evidence §§ 320 et seq.**

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by *Barefoot, J.,* at the 7 May 1990 Criminal Session of Superior Court, NASH County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 12 May 1992.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant appellant.*

WHICHARD, Justice.

Defendant was tried capitally for the first-degree murder of Debra Ann Proctor. Immediately before jury selection, the trial court conducted a hearing on the issue of defendant's representation by counsel and ruled that defendant could proceed *pro se.* After a trial in which defendant did not present evidence, the jury convicted him of first-degree murder on the theory of premeditation and deliberation. At the penalty phase, the State presented documentary evidence in support of the sole aggravating circumstance submitted to the jury — whether defendant previously had been convicted of a felony involving the use or threat of violence to the person. Defendant did not present evidence at the sentencing proceeding and made no jury argument. The only mitigating circumstance the trial court submitted to the jury was a residual one — any circumstance or circumstances which any of the jurors found by a preponderance of the evidence. Upon finding the sole

## STATE v. THOMAS

[331 N.C. 671 (1992)]

aggravating circumstance and rejecting the sole mitigating circumstance, the jury recommended a sentence of death.

On 13 July 1978, Debra Ann Proctor was killed in Rocky Mount. That morning, defendant was seated on the porch of a house on South Church Street. Several other people were gathered on the porch and in the front yard. One of those, Alphonso Taylor, testified that defendant's car was parked in front of the house. Around 11:00 a.m., Taylor saw the victim walk by the house in the direction of a grocery store at the corner of South Church and Home Streets. Taylor testified that as Proctor walked by, defendant rose from his place on the porch, went to his car, opened the trunk, withdrew a long-bladed knife about a foot long, placed the knife under his clothing, and began to walk in the direction of the store. Taylor and a few other men followed, intending to buy cigarettes at the store. Blondie Hinton, who was nine months pregnant, was also walking up South Church Street to the store with a friend.

As the people drew close to the store, the victim walked out. Defendant, without speaking, approached the victim from behind, grabbed her by the hair, pulled her head back, stabbed her, and cut her throat. Taylor and Hinton were within four feet of the victim when defendant assaulted her. Defendant ran past Hinton, said "I'll see y'all later," and warned Hinton not to say anything or he would "get" her. Defendant continued down the street to his car and drove off. Authorities immediately mounted a manhunt, but they did not apprehend defendant until over ten years later. He was then extradited from New York City to North Carolina.

[1] Defendant contends, and we agree, that the trial court committed reversible error by allowing defendant to represent himself. Even before the United States Supreme Court recognized the federal constitutional right to proceed *pro se* in *Faretta v. California*, 422 U.S. 806, 45 L. Ed. 2d 562 (1975), it was well settled in North Carolina that a defendant "has a right to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes." *State v. Mems*, 281 N.C. 658, 670-71, 190 S.E.2d 164, 172 (1972); *see* N.C. Const. art. I, § 23. Before allowing a defendant to waive in-court representation by counsel, however, the trial court must insure that constitutional and statutory standards are satisfied.

First, waiver of the right to counsel and election to proceed *pro se* must be expressed "clearly and unequivocally." *State v.*

**STATE v. THOMAS**

[331 N.C. 671 (1992)]

*McGuire*, 297 N.C. 69, 81, 254 S.E.2d 165, 173, *cert. denied*, 444 U.S. 943, 62 L. Ed. 2d 310 (1979); *see also State v. Treff*, 924 F.2d 975, 978 (10th Cir.), *cert. denied*, --- U.S. ---, 114 L. Ed. 2d 723 (1991). "Given the fundamental nature of the right to counsel, we ought not to indulge in the presumption that it has been waived by anything less than an express indication of such an intention." *State v. Hutchins*, 303 N.C. 321, 339, 279 S.E.2d 788, 800 (1981). By requiring an unequivocal election to proceed *pro se*, courts can avoid confusion and prevent gamesmanship by savvy defendants sowing the seeds for claims of ineffective assistance of counsel. *See Treff*, 924 F.2d at 979.

Once a defendant clearly and unequivocally states that he wants to proceed *pro se*, the trial court, to satisfy constitutional standards, must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel. *Faretta*, 422 U.S. at 835, 45 L. Ed. 2d at 581-82; *State v. Bullock*, 316 N.C. 180, 185, 340 S.E.2d 106, 108 (1986). In order to determine whether the waiver meets that standard, the trial court must conduct a thorough inquiry. This Court has held that the inquiry required by N.C.G.S. § 15A-1242 satisfies constitutional requirements. *State v. Gerald*, 304 N.C. 511, 519, 284 S.E.2d 312, 317 (1981). That statute provides:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C.G.S. § 15A-1242 (1988).

The inquiry under N.C.G.S. § 15A-1242 is mandatory, and failure to conduct it is prejudicial error. *State v. Pruitt*, 322 N.C. 600, 603, 369 S.E.2d 590, 592 (1988). In conducting such inquiries, " '[p]erfunctory questioning is not sufficient.' " *United States ex rel. Axselle*

*v. Redman*, 624 F. Supp. 332, 337 (D. Del. 1985) (quoting *United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982)). As a further safeguard, the trial court must obtain a written waiver of the right to counsel. N.C.G.S. § 7A-457 (1989).

Here, defendant did not "clearly and unequivocally" state a desire to proceed *in propria persona*. Instead, he was confused about the choices available to him. From the beginning, defendant sought to proceed to trial as lead counsel of a defense team which was to include licensed, appointed attorneys.

At defendant's first appearance on 7 April 1989, Judge Patterson in the District Court, Nash County, noted that "[d]efendant desires to proceed pro se *with assistance of counsel.*" (Emphasis added.) In October 1989, Judge Allsbrook in the Superior Court, Nash County, heard motions in the case. On 3 October, defendant stated to the court, "I'm going pro se *but I do need an assistant* but I don't need Mr. Alford [defendant's appointed counsel]; he's incompetent." (Emphasis added.) Recognizing the contradictions inherent in defendant's request, Judge Allsbrook had defendant sworn and inquired whether he desired to waive counsel and proceed *pro se*. Judge Allsbrook attempted to explain to defendant that if he proceeded *pro se*, he would be held to the same rules of evidence and procedure as an attorney would be and that he would face the danger of procedural default. While defendant acknowledged that he would have to follow the normal rules and procedures, Judge Allsbrook was not successful in his efforts to help defendant understand that the trial court could not act as his advocate or counsel. Despite Judge Allsbrook's patient attempts, which span several pages of the transcript, it is apparent that defendant did not understand that the trial court could not step in, absent objection, to insure that defendant's constitutional rights were protected and proper procedures were followed. *See State v. Lashley*, 21 N.C. App. 83, 85, 203 S.E.2d 71, 72 (1974).

Toward the end of the lengthy colloquy, Judge Allsbrook asked defendant whether "[w]ith all of these things in mind do you now waive your right to the assistance of a lawyer and voluntarily and intelligently decide to represent yourself in this case?" Defendant responded that he wanted Alford to be removed, that he wanted the trial court to "appoint me an assistant to assist me on my behalf," and that he did not "want to be left standing alone in court with a[n] incompetent assistant attorney . . . . *I do need*

*legal assistance* but I am going pro se. *I would like for the Court to appoint me an assistant* that is going to help prepare me in this case and my legal defense . . . ." (Emphasis added.) When asked whether he waived his right to counsel, defendant responded, "I waive — I waive my rights for Mr. Terry Alford as my assistant."

Unable to determine to his satisfaction whether defendant sought to waive his right to counsel and proceed *pro se*, Judge Allsbrook ended proceedings for the day. On 4 October, he informed defendant that while he had the right to be represented by counsel or to represent himself, he did not "have a right to have the Court appoint an attorney and to appear as co-counsel [him]self." When defendant continued to respond that he wanted to proceed *pro se*, but with an assistant, although not Mr. Alford, Judge Allsbrook finally asked defendant to sign a written waiver of counsel. Defendant declined, but continued to insist that the trial court remove Alford and allow defendant to proceed *pro se* with a new assistant. Citing defendant's irrational conduct in refusing to cooperate with counsel, Judge Allsbrook committed defendant to Dorothea Dix Hospital for evaluation of his competency to stand trial and assist in his defense.

On 6 November 1989, defendant again appeared before Judge Allsbrook. The State then announced for the first time · that it had evidence to support an aggravating circumstance and that, therefore, it would try defendant capitally. Defendant declared his readiness to be tried without counsel, but after he revealed through a long, rambling monologue that he did not understand why the State had changed the nature of the case, Judge Allsbrook denied defendant's motion to appear as co-counsel. He removed Alford as counsel and appointed Anthony Brown as main attorney in the capital case, with appointment of assistant counsel to follow.

On 5 February 1990, defendant first appeared before Judge Barefoot, who tried the case in Superior Court, Nash County. At that time Anthony Brown and Henry Fisher represented defendant. On 8 March 1990, Fisher and Brown asked permission to withdraw as counsel. Defendant, in another rambling statement, made a corresponding motion to dismiss his attorneys, arguing that the Sixth Amendment guaranteed him the right to "participate in my own trial as co-counsel" and that he needed assistance, but not from incompetent counsel. Judge Barefoot denied the motions to withdraw and the motions to remove counsel.

On 7 May 1990, defendant again appeared before Judge Barefoot, and again the issue of defendant's representation by counsel was raised. In yet another lengthy, incoherent statement, defendant referred to his lawyers as his assistants and to himself as "leading attorney." Rather than clarifying the options available to defendant, Judge Barefoot interpreted defendant's statements as a request to proceed *pro se*. After a short inquiry, he permitted defendant so to proceed.

A defendant has only two choices — "to appear *in propria persona* or, in the alternative, by counsel. There is no right to appear both *in propria persona* and by counsel." *State v. Parton*, 303 N.C. 55, 61, 277 S.E.2d 410, 415 (1981), *disavowed on other grounds by State v. Freeman*, 314 N.C. 432, 333 S.E.2d 743 (1985); *accord State v. Williams*, 319 N.C. 73, 75, 352 S.E.2d 428, 430 (1987); *State v. Porter*, 303 N.C. 680, 688, 281 S.E.2d 377, 383 (1981); *State v. House*, 295 N.C. 189, 204, 244 S.E.2d 654, 662 (1978); *cf. Treff*, 924 F.2d at 979 n.6 ("a defendant has no right to hybrid representation and a request to proceed in such a manner is not deemed an election to proceed *pro se*"); *State v. Robinson*, 290 N.C. 56, 64-67, 224 S.E.2d 174, 178-80 (1976) (trial court's adoption of a "middle course" of legal representation prejudiced defendant). If a defendant chooses to proceed *pro se*, he cannot on appeal claim ineffective assistance of counsel. *E.g., Redman*, 624 F. Supp. at 336; *State v. Brincefield*, 43 N.C. App. 49, 52, 258 S.E.2d 81, 84, *disc. rev. denied*, 298 N.C. 807, 262 S.E.2d 2 (1979). A trial court faced with a *pro se* defendant may appoint standby counsel pursuant to N.C.G.S. § 15A-1243. The duties of standby counsel are limited by statute to assisting the defendant when called upon and to bringing "to the judge's attention matters favorable to the defendant upon which the judge should rule upon his own motion." N.C.G.S. § 15A-1243 (1988). Because "standby counsel" is a creature of legislation, with duties limited by statute, defendant does not benefit from a typical lawyer-client relationship. He thus cannot claim ineffective assistance on the part of standby counsel beyond the limited scope of the duties assigned to such counsel by the statute or the defendant or voluntarily assumed by such counsel. *See Ali v. United States*, 581 A.2d 368, 379-80 (D.C. 1990), *cert. denied*, --- U.S. ---, 116 L. Ed. 2d 213 (1991).

In *State v. McCrowre*, 312 N.C. 478, 322 S.E.2d 755 (1984), the defendant signed a written waiver of appointed counsel, with the intent to retain counsel. On the day of trial, however, defendant,

who had been released from jail only recently, had not yet succeeded in retaining counsel. The Court held that defendant's statement "I'm ready for trial and I would ask the Court to please get someone to assist me in this case" did not constitute an expression of the desire to proceed without an attorney. *Id.* at 480, 322 S.E.2d at 776-77; *see also McGuire*, 297 N.C. at 81-84, 254 S.E.2d at 173-74 (an indigent defendant who stated several times that he wanted different counsel, on another occasion stated that he wanted to represent himself, later apparently acquiesced in appointed counsel, and subsequently behaved at trial in a way that would have required termination of his self-representation, did not clearly and unequivocally assert his desire to conduct a *pro se* defense). We likewise hold that defendant's repeated requests here to appear as "leading attorney" at the head of "assistant" counsel did not amount to clear and unequivocal expressions of a desire to proceed *pro se.* The trial court thus erred in allowing him to do so.

For the reasons stated, the trial court erred in allowing defendant to represent himself. Defendant is therefore entitled to a new trial. *Pruitt*, 322 N.C. at 604, 369 S.E.2d at 593; *Dunlap*, 318 N.C. at 388-89, 348 S.E.2d at 804.

[2] Because the issue may arise upon retrial, we discuss one further assignment of error. Defendant contends he can receive only a life sentence because the State's evidence of the sole aggravating circumstance—that defendant "had been previously convicted of a felony involving the use or threat of violence to the person," N.C.G.S. § 15A-2000(e)(3) (1988)—was insufficient as a matter of law. That evidence consisted solely of a form document, issued by the Administrative Office of the Courts, entitled "Criminal Record Check." The form contains fields of information, some of which were filled in by the Edgecombe County Clerk of Superior Court. In the field near the top of the form for name and address, the clerk had typed "Jesse Lee Thomas." In the middle part of the form, the clerk had checked a box to show that "the following excerpts from the public record [were] indexed by the name given above." Placed immediately below that information is a "disclaimer," which reads: "The criminal records in this office are indexed solely by name and not by any other identifying characteristics. This office cannot guarantee that the records listed herein belong to the individual for whom such record is sought." Just below the disclaimer are the following fields of information, some of which were left blank and others of which contained typed answers:

1) File No.—left blank; 2) Race/Sex—"B/M"; 3) DOB—left blank; 4) Charge—"ROBBERY WITH FIREARM"; and 5) Date Disposed And Disposition—"True Bill: January 16, 1967[.] Judgment: February 23, 1967[.] Deft. pled Not Guilty. At end of evidence, deft. rendered plea of guilty to Common Law Robbery. 9-10 years State Prison."

Prior to the sentencing proceeding and prior to the State's reading to the jury of the information contained on the form, defendant objected that this document was insufficient to support the sole aggravating circumstance. Unlike the Fair Sentencing Act, which contains a similar aggravating factor, N.C.G.S. § 15A-1340.4(a)(1)(o) (1988), the capital sentencing statute does not specify methods of proving convictions. The Fair Sentencing Act specifies two methods of proof—"by stipulation of the parties" or "by the original or a certified copy of the court record of the prior conviction." N.C.G.S. § 15A-1340.4(e) (1988). This Court has held, in a series of cases, that N.C.G.S. § 15A-1340.4(e) is permissive, not mandatory, and that it does not preclude other methods of proof. See, e.g., State v. Strickland, 318 N.C. 653, 660, 351 S.E.2d 281, 284-85 (1987) (testimony of law enforcement officer's personal recollection of conviction); State v. Carter, 318 N.C. 487, 491, 349 S.E.2d 580, 582 (1986) (same); State v. Graham, 309 N.C. 587, 593, 308 S.E.2d 311, 315 (1983) (same and defendant's own testimony); State v. Thompson, 309 N.C. 421, 424, 307 S.E.2d 156, 159 (1983) (defendant's own testimony). However, a statement by a prosecuting attorney is not a sufficient method of proof. State v. Canady, 330 N.C. 398, 399, 410 S.E.2d 875, 876 (1991); Thompson, 309 N.C. at 424-25, 307 S.E.2d at 159.

In capital cases, this Court has recognized that the preferred method of proving a prior violent felony is introduction of the judgment itself. See State v. Maynard, 311 N.C. 1, 26, 316 S.E.2d 197, 211, cert. denied, 469 U.S. 963, 83 L. Ed. 2d 299 (1984); State v. Silhan, 302 N.C. 223, 272, 275 S.E.2d 450, 484 (1981). We have recognized other methods of proof, however. See, e.g., State v. McDougall, 308 N.C. 1, 20-23, 301 S.E.2d 308, 320-21 (stipulation by defendant and testimony by victims of prior felony), cert. denied, 464 U.S. 865, 78 L. Ed. 2d 173 (1983); State v. Hamlette, 302 N.C. 490, 503, 276 S.E.2d 338, 346-47 (1981) (testimony of defendant at guilt phase); State v. Goodman, 298 N.C. 1, 23-24, 257 S.E.2d 569, 584 (1979) (stipulation by defendant at penalty phase).

The partially completed form the State offered here contains a disclaimer warning that the office of the clerk "cannot guarantee that the records listed herein belong to the individual for whom such record is sought." Neither the file number nor the date of birth of the named "Jesse Lee Thomas" is indicated. The form thus was not a sufficiently reliable method of proof to support the sole aggravating circumstance underlying a sentence of death.

At defendant's new capital trial, the State may again attempt to prove the prior violent felony aggravating circumstance. *See Canady*, 330 N.C. at 399, 410 S.E.2d at 876. It must do so, however, by a method that inspires confidence in the fact of the conviction and the identity of the defendant as the perpetrator of the offense. The form offered here expressly disclaims reliability and omits substantial identification information. It thus is inadequate to inspire the confidence in its reliability required in a capital case.

New trial.