IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-67

No. COA20-495

Filed 16 March 2021

New Hanover County, Nos 19CRS 51477, 1211

STATE OF NORTH CAROLINA

v.

YUL BANNERMAN

Appeal by Defendant from judgment entered 18 December 2019 by Judge Richard K. Harrell in New Hanover County Superior Court. Heard in the Court of Appeals 24 February 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Tien Cheng, for the State-Appellee.*
>
> *Michael Spivey for Defendant-Appellant.*

COLLINS, Judge.

¶ 1 Defendant appeals from judgment entered upon jury verdicts of guilty of conspiracy to commit common law robbery, common law robbery, and being a habitual felon. Defendant contends that that the trial court erred by accepting his waiver of counsel because it was not the result of a voluntary exercise of his free will. For the reasons stated below, we discern no error.

## I. Procedural Background

¶ 2        On 20 February 2019, Defendant was arrested on charges of conspiracy to commit armed robbery. Attorney Jordan Duhe was assigned on 22 February 2019 to represent Defendant. Defendant was subsequently indicted for conspiracy to commit robbery with a dangerous weapon, robbery with a dangerous weapon, and being a habitual felon.

¶ 3        On 19 May 2019, Defendant requested new counsel, and Ms. Duhe filed a motion to withdraw alleging a breakdown in communication and a conflict of interest. This motion was granted and Attorney Merrit Wagoner was appointed on 3 June 2019 to represent Defendant.

¶ 4        On 10 October 2019, Mr. Wagoner filed a motion to withdraw, alleging Defendant had asked him to withdraw and had threatened to file grievances against him with the North Carolina State Bar. At the 22 October 2019 hearing on the motion, Defendant expressed a desire to represent himself and signed a written waiver of counsel. At a hearing on 10 December 2019, Defendant was appointed standby counsel.

¶ 5        A jury trial was held on 16-18 December 2019. Defendant was ultimately convicted of common law robbery and conspiracy to commit common law robbery, was found to be a habitual felon, and was sentenced to a prison term of 96 to 128 months. Defendant timely entered oral notice of appeal.

## II.    Discussion

¶ 6      Defendant's sole argument on appeal is that the trial court erred by accepting his waiver of counsel because the waiver was not the result of a voluntary exercise of his free will, but rather was the result of his belief that it was his only choice to avoid delaying his trial.

¶ 7      We review *de novo* a trial court's determination that a defendant has waived the right to counsel. *State v. Simpkins,* 373 N.C. 530, 533, 838 S.E.2d 439, 444 (2020). A criminal defendant's right to counsel during a criminal proceeding is protected by both the federal and state constitutions. *See* U.S. Const. amend. VI; N.C. Const. art. I § 19, 23. Although a defendant has a constitutional right to representation during a criminal proceeding, he may elect to waive that right and instead proceed *pro se. State v. Mems,* 281 N.C. 658, 670-71, 190 S.E.2d 164, 172 (1972).

¶ 8      Any waiver of the right to counsel and concomitant election to represent himself must be expressed "clearly and unequivocally." *State v. Thomas* 331 N.C. 671, 673, 417 S.E.2d 473, 475 (1992) (citation omitted). "Upon receiving this clear request, the trial court is required to ensure that the waiver is knowing, intelligent, and voluntary." *Simpkins,* 373 N.C. at 534, 838 S.E.2d at 445 (citing *Thomas,* 331 N.C. at 674, 417 S.E.2d at 476). The trial court can ensure a waiver is knowing, intelligent, and voluntary by fulfilling the mandate of N.C. Gen. Stat. § 15A-1242, which requires the trial court to conduct a "thorough inquiry" and to be satisfied that

"(1) the defendant was clearly advised of the right to counsel, including the right to assignment of counsel; (2) the defendant '[u]nderstands and appreciates the consequences' of proceeding without counsel; and (3) the defendant understands what is happening in the proceeding as well as 'the range of permissible punishments.'" *Simpkins*, 373 N.C. at 534, 838 S.E.2d at 445 (2020) (citing N.C. Gen. Stat. § 15A-1242).

¶ 9        For the reasons stated below, we conclude that Defendant clearly and unequivocally expressed his desire to waive counsel and represent himself, and that he made this decision knowingly, intelligently, and voluntarily.

¶ 10        On 22 October 2019, the trial court heard Defendant's second appointed attorney's motion to withdraw. After granting the motion and announcing that it would appoint Attorney Paul Mediratta to represent Defendant, the Assistant District Attorney (ADA) stated to the court,

> [W]ith . . . Mr. Wagoner's getting out of the case today, I hope that [Defendant] understands that this case will no longer be heard in December. . . . [W]e had this case set for December 16th. This is his doing, and we're going to have to put this case on the February 24th, 2020 trial calendar to get Mr. Mediratta a chance . . . to get into the case[.]

The trial court responded, "Okay." The following colloquy then took place:

> THE DEFENDANT: Excuse me, Your Honor. I withdraw for an attorney if we can have this date of December the 16th. I withdraw, and I will represent myself if I can have a date in court.

THE COURT: I can hear you, but can we get that --

THE DEFENDANT: I would withdraw counsel if I could have my date in court.

THE COURT: You want to represent yourself on that?

THE DEFENDANT: If we don't keep the December 16th date. I got some motions I need to be heard on.

¶ 11 Defendant proceeded to argue that the State was withholding exculpatory evidence. The trial court explained to Defendant, "that's not why we're in here right now," and again asked Defendant if he wanted to represent himself. Defendant responded, "Yes, I'm ready. I'll represent myself." Defendant signed a waiver of counsel form, waiving his right to assigned counsel. The trial remained set for 16 December 2019.

¶ 12 Defendant was brought back into court on 10 December 2019 to address his letter to the court requesting a "co-counselor" for trial. At the outset of the hearing, the trial court asked Defendant, "You want to represent yourself; is that correct? Do you intend to represent yourself?" Defendant responded, "Yes."

¶ 13 After some discussion about Defendant's desire to see some videos he thought were in the State's possession, the ADA explained to the trial court about Defendant's statements at the October hearing that he wanted to represent himself and the ADA "ask[ed] that the Court maybe go over some of those responsibilities, that he be made

fully aware of what it would mean to represent himself if the Court is willing to do that."

The trial court then addressed Defendant, "Mr. Bannerman, I do need to ask you some questions about representing yourself. . . . [T]he questions I'm asking you right now about regarding your representing yourself. I have to ask you a series of questions." Defendant responded, "Okay." Through questioning, the trial court confirmed that Defendant was able to hear and understand him and was not under the influence of alcohol, drugs, or any other substances. The trial court discerned that Defendant was 51 years old, got his GED in 1987, and could read and write at an "A level." The following inquiry then took place:

> THE COURT: Do you understand that you have the right to have an attorney represent you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand you may ask for an attorney to be appointed to represent you -
>
> THE DEFENDANT: Yes.
>
> THE COURT: -- if you cannot afford to hire one?
>
> THE DEFENDANT: Yes.

The trial court informed Defendant he would be required to follow the same rules of evidence and procedure if he represented himself, the nature of the charges

against Defendant, and his potential punishment. The trial court engaged in the following colloquy with Defendant:

> THE COURT: All right. Do you now waive your right to have counsel, or have an attorney represent you at your trial?
>
> THE DEFENDANT: That's going to move the date back, Your Honor.
>
> THE COURT: No, it's not going to move the date. I'm asking you, do you want an attorney?
>
> THE DEFENDANT: Yeah, I wanted a co-counsel.

At this point, the trial court told Defendant that he could not have co-counsel and that if the trial court appointed an attorney, it would be as standby counsel. The trial court explained that standby counsel is not co-counsel and that standby counsel "will not be sitting at the table beside you. You will be sitting at that table by yourself." Defendant responded, "Okay." The trial court further explained that standby counsel "will only be to assist you on some issues that you might have but not in the presence of the judge or in the presence of the jury." Defendant responded, "Okay. That's understandable. Yes." The following exchange then took place:

> THE COURT: So that's for standby counsel. I'm now talking about a regular attorney. You're waiving your right to have an attorney represent you at trial?
>
> THE DEFENDANT: Yes. I don't want my court date pushed back. I don't want the court date pushed back.

> THE COURT: All right. I understand that. So you're giving up that right, to have an attorney?
>
> THE DEFENDANT: Yes. You said I'm allowed to have standby, right?
>
> THE COURT: I haven't gotten there yet.
>
> THE DEFENDANT: All right. I'll waive that if I could have a standby, if you don't mind, for some legal issues.

The trial court accepted Defendant's waiver of counsel and appointed standby counsel.

These exchanges show that on several occasions, Defendant clearly and unequivocally stated his desire to waive counsel and represent himself. *State v. Paterson,* 208 N.C. App. 654, 663, 703 S.E.2d 755, 761 (2010) (determining that the trial court's multiple colloquies with defendant and defendant's "repeated assertion" that he wanted to represent himself demonstrated defendant's clear and unequivocal desire to represent himself). Moreover, the questions asked by the trial court mirrored the fourteen-question checklist published by the University of North Carolina School of Government, which "illustrate[s] the sort of 'thorough inquiry' envisioned by the General Assembly when [N.C. Gen. Stat. § 15A-1242] was enacted[.]" *State v. Moore,* 362 N.C. 319, 327-28, 661 S.E.2d 722, 727 (2008). The trial court's thorough inquiry and Defendant's answers showed that Defendant's waiver was made knowingly, intelligently, and voluntarily.

¶ 19          Defendant does not contend that he did not clearly and unequivocally waive his right to counsel or that the trial court failed to conduct an adequate inquiry under N.C. Gen. Stat. § 15A-1242. Instead, citing *State v. Bullock*, 316 N.C. 180, 340 S.E.2d 106 (1986), and *State v. Pena*, 257 N.C. App. 195, 809 S.E.2d 1 (2017), Defendant contends that his decision to waive counsel was not the voluntary exercise of his free will because it was the result of his belief that it was his only choice to avoid delaying his trial from December to February. *Bullock* and *Pena* are distinguishable.

¶ 20          In *Bullock,* the trial court allowed defendant's privately retained counsel to withdraw, at defendant's request, six days before his trial date but informed defendant he would not receive a continuance. *Bullock,* 316 N.C. at 182-83, 340 S.E.2d at 107. On the day of his trial, defendant informed the court he had been unable to retain counsel, but the trial court told defendant "[t]he case will be for trial" and defendant proceeded to be tried without counsel. *Id.* at 184, 340 S.E.2d at 108. The Supreme Court ultimately held that defendant "acquiesced to trial without counsel because he had no other choice." *Id.* at 185, 340 S.E.2d at 108.

¶ 21          Likewise, in *Pena,* the trial court denied defendant's request for a different court-appointed attorney and denied defendant's request for additional time to retain a private attorney. *Pena,* 257 N.C. App. at 197-98, 809 S.E.2d at 3-4. Defendant was forced to choose between his original court-appointed counsel and representing himself, and he ultimately decided to represent himself. *Id.* at 203, 809 S.E.2d at 6.

This Court determined that defendant did not "outright request" to represent himself but instead chose to do so when faced with no other option other than continuing with his court-appointed counsel. *Id.*

¶ 22        Unlike in *Bullock* and *Pena* where the trial court was unwilling to allow defendants more time to secure attorneys and, thus, defendants had no option but to represent themselves at trial, the trial court in this case had just announced that it would appoint Defendant his third attorney. At that point, Defendant voluntarily waived counsel to accommodate *his own desire* to keep a December trial date. His understanding, either correct or incorrect, that his trial could be delayed until February if he accepted the appointment of the third attorney did not make his choice to waive counsel involuntary. His motivation simply explains why he chose to voluntarily waive counsel and proceed *pro se* with standby counsel.

## III.    Conclusion

¶ 23        Defendant clearly and unequivocally expressed his desire to waive his right to counsel and the trial court conducted a thorough inquiry, in compliance with N.C. Gen. Stat. § 15A-1412, to ensure this waiver was knowing, intelligent, and voluntary. Accordingly, we discern no error.

NO ERROR.


Judges TYSON and WOOD concur.