An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-112

Filed 19 November 2025

Pitt County, Nos. 22CR053520-730, 22CR053521-730

STATE OF NORTH CAROLINA

v.

JUSTIN MICHAEL TYSON

Appeal by Defendant from judgments entered 31 August 2023 by Judge Marvin K. Blount, III in Pitt County Superior Court. Heard in the Court of Appeals 13 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Natalia Isenberg, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C. Franke, for the Defendant.*

WOOD, Judge.

Justin Michael Tyson ("Defendant") appeals from jury verdicts finding him guilty of (1) assault with a deadly weapon with the intent to kill inflicting serious injury, (2) assault on a detention center employee inflicting serious injury, (3) possession of a weapon by a prisoner, and (4) carrying a concealed weapon. Defendant

raises two issues on appeal. Defendant first raises the issue of whether the trial court erred by failing to comply with N.C. Gen. Stat. § 15A-1242 before allowing Defendant to proceed to trial *pro se* because the trial court misstated the maximum punishment for assault with a deadly weapon with the intent to kill inflicting serious injury. Second, Defendant raises the issue of whether the trial court failed to intervene *ex mero motu* during the State's closing argument. For the reasons stated below, we hold Defendant received a fair trial, free from error.

## I. Factual and Procedural Background

On 21 June 2022, Defendant attacked Pitt County Detention Officer Gregory Scism ("Officer Scism") during his recreational period. Defendant, without provocation, repeatedly punched Officer Scism in the face and neck area using a shiv made from a toothbrush fitted with a sharp metallic end, causing lacerations and injury to Officer Scism's face and neck. Officer Scism was taken to ECU Health where he was treated for a broken nose, cuts to his face and neck, and a swollen lip. Officer Scism also suffered psychological trauma from this incident and was still in therapy for post-traumatic stress disorder during trial.

On 8 August 2022, Defendant was indicted for three felony offenses: assault with a deadly weapon with the intent to kill inflicting serious injury ("AWDWIKISI"), assault on a detention center employee inflicting serious injury, and possession of a weapon by a prisoner. On the same day, Defendant was also indicted on the related misdemeanor charge of carrying a concealed weapon. On 1 June 2023, the State filed

a notice of aggravating factors indicating the "offense was committed against or proximately caused serious injury to a present or former law enforcement officer, employee of the Department of Public Safety or the Department of Adult Correction, [or] jailer . . . ."

On 19 May 2023, a supplemental capacity hearing to reevaluate Defendant's mental capacity and ability to stand trial took place. At the outset, the trial court took judicial notice of "all previous evaluations for capacity completed on the Defendant dating back to 2013, 2014, 2019, and 2023, as well as the [c]ourt's order from a previous capacity hearing in November 2019." Defendant continuously expressed his intent to represent himself at trial during this hearing. Dr. Mark Hazelrigg, Ph.D. ("Dr. Hazelrigg"), an expert witness in forensic evaluations who had performed capacity evaluations on Defendant in the past, testified to Defendant's ability to stand trial. Dr. Hazelrigg testified he had last met with Defendant via videoconference on 5 January 2023 and in-person in 2019. Although Dr. Hazelrigg concluded in 2019 that Defendant was not capable of proceeding to trial, he testified at this hearing that "[i]n January when I saw him [via videoconference] he was not showing any of those symptoms that I've described [from 2019], so my opinion was he was stable, not having symptoms, and was capable of proceeding." Dr. Hazelrigg further testified that other than Defendant's history of mental incapacity, he had no concerns about Defendant's current decision making.

Next, Defendant testified at the capacity hearing and answered questions from the trial court:

> THE COURT: And do you understand the purpose of this hearing?
>
> [Defendant]: Yes.
>
> THE COURT: What's your understanding of it?
>
> [Defendant]: The purpose of this hearing is to make sure that I have the capacity to proceed at trial and not only to proceed to trial, but to proceed at trial as my own counsel.
>
> THE COURT: What [do] you want to say about that?
>
> [Defendant]: I feel that I have the capacity to proceed, not only is my capacity sufficient, I'm intelligent enough to proceed as my own counsel *and I will voluntary elect to proceed as my own counsel.* So I feel that not only am I capable to proceed, but I'm sufficient enough in the knowledge of the legal system to handle my affairs appropriately.

Defendant went on to state that much has changed since his 2019 capacity hearing when he was found not capable of standing trial, including:

> [Defendant]: I have had a chance to study more, referring to the legal system. And I know more now and I understand why you said back in 2019 the things that you said. So being that I have advanced in the legal system that makes the biggest difference of all.
>
> . . . .
>
> THE COURT: Have you got any questions [for] me?
>
> [Defendant]: No.
>
> THE COURT: About going forward?

- 4 -

> [Defendant]: With me going forward the question I would as – *that I would ask is that you would allow me to exercise my Sixth Amendment right and let me handle my own affairs in representing myself* because I am intelligently and voluntarily electing to do so pursuant to Reddick versus California, when a defendant intelligently and voluntarily elects to represent himself the Sixth Amendment right which is delegated to the States through the 14th allows that.

On 26 June 2023, a superseding indictment for the charges of AWDWIKISI, assault on a detention center employee inflicting serious injury, and possession of a weapon by a prisoner was filed. At the outset of trial on 28 August 2023, Defendant continued to express his intent to represent himself. The trial court began its inquiry to Defendant by stating, "you've been charged with one count of assault with a deadly weapon with intent to kill inflicting serious injury. *It is a class C felony, which carries a maximum punishment of 188 months.*" The trial court continued its inquiry of Defendant by discussing his right to be represented by counsel and the consequences of proceeding without counsel. Additionally, the trial court explained that Attorney Privette, who represented Defendant during his capacity hearing, would be acting as standby counsel for him throughout the trial. After Defendant reiterated his understanding of the consequences of representing himself, the trial court stated, "[a]ll right. The court will enter the written order that the defendant has been clearly advised of his rights to assistance of counsel and enter the written order date accordingly." The trial court then proceeded to hear motions from Defendant,

including a motion for a continuance which was denied. Defendant made no further comments or objections to the trial court's denial of his motion to continue.

On 31 August 2023, a Pitt County jury found Defendant guilty of AWDWIKISI, assault on a detention facility employee inflicting serious injury, possession of a weapon by a prisoner, and misdemeanor carrying a concealed weapon. Defendant was found to be a prior felony record level III and was sentenced to 110 to 144 months on the charge of AWDWIKISI and 21 to 35 months for assault on a detention facility employee inflicting serious injury to run concurrently with one another. Further, Defendant was sentenced to 10 to 21 months for possession of a weapon by a prisoner and 30 days in jail for carrying a concealed weapon to run concurrently with one another but to run consecutively to the prior sentence. On the same day, Defendant entered notice of appeal in open court.

## II. Analysis

Defendant makes two arguments on appeal. First, Defendant argues that he did not waive his right to counsel knowingly, intelligently, and voluntarily because the trial court misstated the maximum possible sentence for the AWDWIKISI charge. Second, Defendant argues the trial court erred when it failed to intervene *ex mero motu* during the State's closing argument when the prosecutor told the jury, "[i]f you're sitting here thinking why on earth are we still going through this process when he clearly did it. Great. You've been paying attention."

## A. Waiver of Counsel

The trial court's decision to allow a defendant to proceed *pro se* and waive his right to counsel at trial pursuant to N.C. Gen. Stat. § 15A-1242 is reviewed *de novo*. *State v. Mahatha*, 267 N.C. App. 355, 360, 832 S.E.2d 914, 919 (2019). To ensure constitutional and statutory standards are satisfied, the trial court "'must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel.' A thorough inquiry into the three substantive elements of N.C. Gen. Stat. § 15A-1242 satisfies constitutional requirements." *Id.* at 361, 832 S.E.2d at 919 (cleaned up) (quoting *State v. Thomas*, 331 N.C. 671, 674, 417 S.E.2d 473, 476 (1992)).

The relevant statute states:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) *Comprehends the nature of the charges and proceedings and the range of permissible punishments*.

N.C. Gen. Stat. § 15A-1242 (emphasis added). "The trial court must specifically advise a defendant of the possible maximum punishment[.]" *State v. Lindsey*, 271 N.C. App. 118, 127, 843 S.E.2d 322, 329 (2020). However, "a mistake in the number

of months which a trial judge employs during a colloquy with a defendant contemplating the assertion of his right to proceed *pro se*" does not constitute "a *per se* violation of N.C. Gen. Stat. § 15A-1242." *State v. Gentry,* 227 N.C. App. 583, 599-600, 743 S.E.2d 235, 246 (2013). Further, "such a calculation error would only contravene N.C. Gen. Stat. § 15A-1242 if there was a *reasonable likelihood* that the defendant might have made a different decision with respect to the issue of self-representation had he or she been more accurately informed about 'the range of permissible punishments.'" *Id.* at 600, 743 S.E.2d at 246 (emphasis added).

Defendant indicates the trial court misstated the maximum possible punishment for the AWDWIKISI charge only. While Defendant argues this error is not cured by written waiver or prior inquiry, he does not argue that the trial court's inquiry was otherwise improper. In support of his argument, Defendant attempts to distinguish his case from *State v. Gentry*, where this Court determined that given the defendant's age, the fourteen year difference between the stated maximum punishment and correct maximum punishment were both "tantamount to a life sentence[,]" thus, there was not a reasonable likelihood the error would have changed the defendant's mind about representing himself. *Id.* at 600, 743 S.E.2d 246-47. Here, Defendant was thirty-two years old at the time of trial and while he is correct that, when considering his age, he was not facing a possible life sentence and the difference amounts to years, we are unpersuaded that the 43 month difference between the stated and allegedly correct sentence creates a reasonable likelihood he would have

changed his mind.

Defendant indicated his intent to represent himself at the pre-trial capacity hearing that took place 19 May 2023 and at the outset of trial on 28 August 2023. On appeal, Defendant only takes issue with the maximum possible punishment stated by the trial court on the charge of AWDWIKISI. The trial court informed Defendant, "you've been charged with one count of assault with a deadly weapon with intent to kill inflicting serious injury. It is a class C felony, *which carries a maximum punishment of 188 months*." Defendant contends the correct maximum punishment of which the trial court should have advised him was 231 months.[1]

The record is clear Defendant expressed and maintained the intent to represent himself since the 19 May 2023 capacity hearing, more than three months prior to trial. At both the capacity hearing and at trial, thorough inquiries and explanations to Defendant were made notifying him of the consequences of representing himself. Defendant did not once waiver in his intent to represent himself. After being informed of all maximum possible punishments he faced, the following exchange took place:

> THE COURT: And do you understand that you have the
> right to be represented by a lawyer?

---

[1] 188 months is the maximum possible punishment in the presumptive range at the highest prior record level for a class C felony. N.C. Gen. Stat. § 15A-1340.17. 231 months is the maximum possible punishment in the aggravated range at the highest prior record level for a class C felony. *Id.* The trial court was aware Defendant was a prior record level III, which carries a 128 month maximum in the presumptive range and 156 month maximum in the aggravated range for a class C felony. *Id.* Thus, the maximum possible punishments Defendant was informed of by the trial court were greater than the punishments he actually faced.

THE DEFENDANT: Yes.

THE COURT: And you understand you may request a lawyer be appointed for you if you're unable to hire one, one will be appointed if you cannot afford to pay for one?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you decide to represent yourself you must follow the same rules of evidence and procedure that a lawyer appearing in this court must follow?

THE DEFENDANT: Yes.

THE COURT: And do you understand that if you decide to represent yourself the court will not give you any legal advice concerning defenses, jury instructions, or any other legal issues that may be raised in this trial?

THE DEFENDANT: It's understood.

THE COURT: And you understand that I must act as an impartial judge in this case and I will not be able to offer you any legal advice and that I must treat you just as I would treat a lawyer?

THE DEFENDANT: Yes.

THE COURT: And you understand that you've been charged with the counts that I referenced or the charges I've referenced to you earlier and that you can be - - if you're convicted of these charges you could be imprisoned for the maximum amount of time that I explained to you a moment ago?

THE DEFENDANT: Right.

THE COURT: Now, with all these things in mind, do you wish to ask me any questions about what I've just said to you?

THE DEFENDANT: Yes, so that we don't waste the court's time in deciding upon the defendant's motion for a separate trial, the defendant asks that this court hears his motion to dismiss.

THE COURT: I'm going to hear this but all I want to address at this point is your lawyer situation. I want this to be on the record and I want to make sure that you understand all of your rights and that you have in this case regarding an attorney and your right versus the right to represent yourself. So if you wish to ask me any questions about what I've just said to you just on these questions.

THE DEFENDANT: No, all of that's understood.

THE COURT: Again, do you now waive your right to assistance of a lawyer and voluntarily and intelligently decide to represent yourself in this case?

THE DEFENDANT: Yes.

We note Defendant ultimately was sentenced to a maximum term of 110 to 144 months for his conviction of AWDWIKISI. This term is less than the maximum punishment the trial court informed the Defendant he could face for the charge of AWDWIKISI. Further, Defendant's prior record level of III, carries maximum punishments at the presumptive and aggravated ranges of 128 and 156 months respectively. N.C. Gen. Stat. § 15A-1340.17.

Additionally, Defendant argues he lacked knowledge that he was facing aggravating factors and that the motion he made for a continuance at the beginning

of trial showed he was not prepared to represent himself at trial. We disagree.

First, while Defendant stated he was unaware he was facing aggravating factors, Defendant's standby counsel followed his comment by immediately stating that she had provided Defendant copies of all discovery, which included the notice of aggravating factors that the State filed prior to trial. Second, Defendant's motion for a continuance does not support the contention that he would have chosen to be represented by counsel had he been notified he could be facing the possibility of an additional 43 months. Had Defendant not felt prepared to represent himself at trial, he had the opportunity to be represented by counsel.

Based on the trial court's thorough inquiries at the capacity hearing and outset of trial and Defendant's consistent clear expression of intent and understanding of the consequences of representing himself, we conclude the trial court adequately complied with the relevant provisions of N.C. Gen. Stat. § 15A-1242 because there was not a reasonable likelihood that Defendant's decision to represent himself was influenced by the trial court's misstatement. *Gentry*, 227 N.C. App. at 600, 743 S.E.2d at 246.

**B. State's Closing Argument**

Defendant argues the trial court erred by failing to intervene *ex mero motu* during the State's closing argument when the prosecutor said, "[i]f you're sitting here thinking why on earth are we still going through this process when he clearly did it. Great. You've been paying attention."

Defendant concedes he did not object to the allegedly improper closing arguments during trial.

> The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*.
>
> In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002). "In determining whether an argument is grossly improper, appellate courts consider 'the context in which the remarks were made, as well as their brevity relative to the closing argument as a whole.'" *State v. Young*, 294 N.C. App. 518, 545, 903 S.E.2d 460, 477 (2024) (quoting *State v. Taylor*, 362 N.C. 514, 536, 669 S.E.2d 239, 259 (2008)).

Here, the record tends to show that the State made the statement at issue in apparent reference to Defendant's many questions to witnesses regarding his intent to kill and Defendant's comments about his intent to kill during his own closing argument. Defendant's closing argument focuses on the idea that because he "laid down and put his hands behind his back[,]" and there were "superficial wounds" and because he "didn't resist arrest" there could not have been intent to kill. The State,

in apparent response to this contention, stated,

> And we're talking about whether or not there was an intent to kill. And the defendant would have you think that well, since I was unsuccessful I was not intending to kill anybody. Since I gave up when Officer Scism fought back and the other officers were coming in, you can't convict me of anything. If you're sitting here thinking why on earth are we still going through this process when he clearly did it. Great. You've been paying attention.

A video of the attack was shown to the jury. Defendant is clearly identifiable as the attacker, and he does not deny his participation in the attack. We conclude the State made a reasonable inference, based on the video evidence, that Defendant did in fact assault Officer Scism with an apparent intent to kill based on the unprovoked attack. "[O]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken." *State v. Degraffenried,* 262 N.C. App. 308, 310, 821 S.E.2d 887, 888 (2018) (quoting *State v. Waring*, 364 N.C. 443, 499, 701 S.E.2d 615, 650 (2010)). Further, as the State correctly argues, "to establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *Id.* Defendant cannot do so here.

Even assuming *arguendo* that the State's comment was improper, this Court in *State v. Thompson* found such error harmless when the evidence of defendant's

guilt is overwhelming. *State v. Thompson,* 118 N.C. App. 33, 42-43, 454 S.E.2d 271, 277 (1995). The video evidence of Defendant's unprovoked attack of Officer Scism, makes it highly unlikely the State's comment in reference to what can be seen in the video prejudiced Defendant.

### III.    Conclusion

For the foregoing reasons, we hold that Defendant received a fair trial free from error.

NO ERROR.

Chief Judge DILLON and Judge COLLINS concur.

Report per Rule 30(e).