IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-135

No. 248A21

Filed 16 December 2022

STATE OF NORTH CAROLINA

v.

AMY REGINA ATWELL

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 278 N.C. App. 84, 2021-NCCOA-271, affirming a judgment entered on 29 January 2020 by Judge Jeffery K. Carpenter in Superior Court, Union County. Heard in the Supreme Court on 31 August 2022.

*W. Michael Spivey for defendant-appellant.*

*Joshua H. Stein, Attorney General, by Caden William Hayes, Assistant Attorney General, for the State-appellee.*

MORGAN, Justice.

In this appeal, we revisit the question of what actions or omissions by a defendant may properly be determined by a trial court to be so egregious as to constitute a forfeiture of the constitutional right to counsel and how the jurisprudence of forfeiture is distinct from that concerning a criminal defendant's waiver of the right to counsel. We conclude that the issue of waiver of counsel is inapposite in this case because defendant expressly requested the appointment of counsel to assist her, and that the trial court's alternate determination that defendant's behavior was

sufficiently egregious to warrant the forfeiture of the right to counsel was erroneous. Accordingly, we reverse the decision of the Court of Appeals affirming the trial court and remand to the lower appellate court for further remand to the trial court for defendant to receive a new trial.

## I.    Factual Background and Procedural History

Defendant was the subject of an ex parte Domestic Violence Protection Order (DVPO) entered on 9 August 2013 in District Court, Union County. The ex parte order required that defendant "surrender to the Sheriff . . . [any] firearms, ammunition, and gun permits . . . in [her] . . . ownership or control." The order further provided that "possessing, purchasing, or receiving a firearm, ammunition or permits to purchase or carry concealed firearms after being ordered not to possess firearms, ammunition or permits is a crime," noting that a violation of the order's prohibition on possessing a firearm could result in "a Class H felony pursuant to North Carolina G.S. 14-269.8" and could cause defendant to "be imprisoned for up to 30 months." The ex parte DVPO was sought by defendant's mother on behalf of herself and defendant's stepfather and two of defendant's minor children who were then residing with defendant's mother and stepfather, and a third minor child. Defendant's mother alleged that defendant had harassed, stalked, and threatened defendant's mother and stepfather, and had also exposed defendant's minor children, who were in the

custody of defendant's mother, to "emotional abuse." A DVPO was entered on 25 September 2013.

¶ 3        The 2013 DVPO was renewed each year thereafter and remained in effect on 9 August 2017 when defendant attempted to purchase a .22 caliber rifle at a pawn shop in Tennessee. A warrant was issued on 10 August 2017, and defendant was arrested on 4 September 2017. Attorney Vernon Cloud was assigned to represent defendant on the following day of 5 September 2017, but it was not until 5 February 2018 that a grand jury in Union County returned an indictment on the charge of attempting to possess a firearm while subject to a DVPO prohibiting the same. The case was continued twice—apparently based upon two handwritten pro se requests filed by defendant—and defendant also sought to have Cloud removed as her attorney, although it does not appear that defendant's first motion for removal of Cloud was ever resolved. Defendant filed a second pro se motion to remove Cloud on 12 February 2018 and that motion was allowed on 17 April 2018. On the same date of 17 April 2018, defendant also filed a waiver of counsel form. On 8 May 2018 defendant, pro se, filed a "Motion to Dismiss" in which she raised various issues, such as jurisdictional objections, including an allegation that defendant was "a Tuscarora Native American with her sealed tribal card." The record on appeal also includes a second waiver of counsel form signed by defendant on 15 May 2018.

¶ 4        Defendant, pro se, filed a motion for a continuance on 12 June 2018, noting that she was experiencing health problems and lacked an attorney; the trial court appointed Peter Dwyer to represent defendant that same day. However, on 24 July 2018 and again on 13 August 2018, defendant filed additional handwritten pro se motions to dismiss the charge against her which also requested a change of venue to Stanly County. On 11 September 2018, Attorney Dwyer withdrew for reasons not specified in the record and the trial court appointed defendant's third attorney, Tracy Regan, although Regan was allowed to withdraw on 11 October 2018, at which point defendant completed a third waiver of counsel form. At a hearing on 13 December 2018, defendant had been unsuccessful in obtaining private counsel and a fourth appointed attorney, Tiffany Porter, was named to represent defendant. On 31 January 2019, Porter was permitted to withdraw from defendant's representation, again for reasons not disclosed in the record on appeal, and Courtney Ballard was named as defendant's new counsel. By 26 June 2019, defendant had filed a motion to remove Ballard, and in August 2019, defendant sought another continuance. On 21 August 2019, the trial court allowed Ballard's withdrawal and defendant signed a waiver of counsel form. During the almost eight months of Ballard's representation of defendant, the State never set the case for trial.

¶ 5        Defendant's case next came on for hearing on 18 September 2019 in Superior Court, Union County, the Honorable William A. Wood presiding. The prosecutor

stated to the trial court that defendant's case had been continued the previous month

to allow time for defendant to hire an attorney and that the State hoped to move the

case forward. When the trial court asked defendant what she was "going to do about

a lawyer," defendant explained that while she had made payments to a private

attorney, she could not afford to continue to do so and wanted another court-

appointed attorney. Judge Wood responded:

> THE COURT: Well, quite frankly I've never seen a file like
> this as far as your attorney situation goes. This all started
> back in August 19, 2017, which is the date of offense in
> these charges. And it looks like you got indicted in
> February of 2018, a year and a half ago, and were
> appointed an attorney who you promptly fired on February
> 12th, 2018. Then you waived your right to a court
> appointed lawyer. I believe you signed another waiver of
> your right to a court appointed lawyer. Those were on April
> 17th, 2018 and May 15th, 2018. You were given a
> continuance on June the 12th at your own request and then
> you were appointed another attorney on September the
> 11th, 2018 who withdrew from your case, it doesn't really
> say why in the file. You filed another waiver on October
> 11th, 2018. You were appointed another attorney on
> December the 13th, 2018 who you promptly fired in June
> of 2019. And then you signed another waiver and asked for
> a continuance to hire your own lawyer. Don't you think it's
> gone on long enough?

Defendant reiterated that she could not afford a lawyer and had asked for a

continuance due to her disability and low income. When Judge Wood asked defendant

why she had "fired" her prior attorneys, defendant explained that one appointed

counsel had withdrawn due to a conflict of interest, and "two other attorneys were

totally going in two different ways of defense," such that defendant did not feel that the attorneys represented her interests.

¶ 6     After the State informed the trial court that it was prepared to move forward and set the matter for the trial calendar as soon as defendant was arraigned and her counsel circumstance was resolved, the following colloquy then transpired:

> THE COURT: Well, *what I'm going to do is I'm going to put an order in the file basically saying you waived your right to have an attorney.* If you would like to hire your own attorney, that will be fine, but based on these — *the history of this file, it appears to me that your process in moving this case along has been nothing more than to see how long you can delay it until it goes away.* The way you've behaved appears to be nothing more than a delay tactic and that's what I'm going to put an order in the file and I'm going to make specific findings as to everything I just told you and to some other things that are in the file. I'm going to let the prosecutor arraign you and set this case for trial. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, that doesn't preclude you from hiring your own attorney. *You can hire your own attorney but you're going to have to do that and have your attorney ready by the time the prosecutor has this case on the trial calendar. Additionally, if you don't hire an attorney, you're going to be responsible for representing yourself. Do you know what that means*?
>
> THE DEFENDANT: Representing myself.
>
> THE COURT: Yes.
>
> THE DEFENDANT: It means representing myself.

THE COURT: It does. It means you're going to have to negotiate any plea deal if there is one with the prosecutor. You're going to have to handle all the [d]iscovery in this case. If there is a jury trial you're going to have to select a jury and keep up with any motions and try the case just as if you were an attorney and be held to the same standard as an attorney. You're not going to get legal advice from me or whoever the judge is. Do you understand that?

THE DEFENDANT: No, because I've already requested a jury trial.

THE COURT: Well what is it about that that you don't understand?

THE DEFENDANT: You said if I get a jury trial.

THE COURT: You're welcome — I mean, nobody's going to make you plead guilty. You can have a jury trial.

THE DEFENDANT: Thank you.

THE COURT: There's other ways for a case to go away. Do you understand that?

THE DEFENDANT: Okay.

THE COURT: I don't know what's ultimately going to have [to] happen to this case but you are entitled to a jury trial most definitely. *What I want you to understand is that if you represent yourself, you're going to be held to the same standards of an attorney. Do you understand that?*

THE DEFENDANT: *You're giving me no choice. I mean, I asked for another court appointed attorney and you said no, so—*

> THE COURT: You've had choice after choice after choice. *You've been given a court appointed attorney on three occasions,[1] which is two more than you usually get.*
>
> THE DEFENDANT: I've got the e-mails from one of the lawyers that was actually giving me wrong court dates to be in court.
>
> THE COURT: Well, one of the attorneys there is no indication as to why that attorney withdrew, the other took—you took them off the case, basically. So do you understand what's going on here, ma'am?
>
> THE DEFENDANT: *You've denied me a court appointed attorney. Yes, I understand that.*
>
> THE COURT: I've denied you a fourth court appointed attorney.
>
> THE DEFENDANT: I understand that, yes.

(Emphasis added). Defendant was then arraigned and her trial was set for the week of 2 December 2019.

¶ 7    On 20 September 2019, the trial court entered an order on "defendant's pro se, oral motion for a continuance . . . to give her additional time to hire an attorney," in which it recounted much of the above-stated procedural history of defendant's cycle of obtaining and dismissing court-appointed counsel, as well as her numerous waivers of counsel. The order included findings of fact that defendant had received five court-appointed attorneys, at least two of whom defendant had caused to be removed

---

[1] This appears to be a *lapsus linguae* by the trial court as the record reflects that defendant had been appointed a total of five attorneys over the course of her case.

"because of her own conduct or a generally unreasonable expectation that she has for her case"; had "been put on notice . . . as to what it means to represent herself and all that that entails"; and "obviously understands the proceedings in this matter and intends to ultimately act as her own attorney as she has filed numerous pro se motions . . . without regard to whether or not she was represented by counsel at the time." The trial court further found that "[i]t is obvious . . . that [defendant's] conduct in this matter is nothing more than a delay tactic and an attempt to do whatever she can to avoid bringing this matter to a conclusion." The trial court then decreed that "defendant, by her own flagrant, dilatory conduct has forfeited or effectively waived her right to be represented by counsel in this matter and at this time proceeds pro se." The trial court did note that defendant could still retain private counsel to represent her but emphasized that the matter was set for trial on 2 December 2019 and stated that "defendant shall proceed at that time with or without retained counsel."

¶ 8 Defendant's case did not actually come on for trial until 13 January 2020. Defendant was present during the first day, which was largely occupied with jury selection, and she expressed confusion about trying to have a witness and certain evidence subpoenaed for the trial. On the second day of trial, jury selection was completed and the State gave its opening statement. At 12:16 p.m. court recessed for lunch, and defendant failed to return to court after the meal break. The trial court

recessed the trial for the day and issued an order for defendant's arrest. The following morning, defendant again failed to appear, and the trial court decided, in light of defendant's apparent choice to voluntarily absent herself from trial, to proceed with trial in defendant's absence.

¶ 9        Defendant was not present for the remainder of her trial, which took place over the course of the third day. At the conclusion of the trial, the jury found defendant guilty of attempting to possess a firearm while subject to a DVPO. Defendant was located about two weeks later, and on 28 January 2020, the trial court sentenced her to a term of 5 to 15 months in prison. Defendant gave notice of appeal in open court.

## II.    Appellate Proceedings

¶ 10        In the Court of Appeals, defendant made two arguments: that the indictment charging her was fatally defective and that the trial court erred in concluding that defendant had forfeited her right to counsel. Defendant did not assert any argument regarding waiver of counsel. The entire panel of the lower appellate court agreed that the indictment was valid because it "adequately expressed the charge against defendant within a reasonable certainty to enable defendant to prepare for trial and for the court to pronounce the sentence." *State v. Atwell*, 278 N.C. App. 84, 2021-NCCOA-271, ¶ 15.

¶ 11        With regard to the issue of counsel, the majority of the panel was inconsistent in its framing and analysis of this issue as presented by defendant's appeal, stating

in an introductory paragraph and in a discussion subsection heading that the legal issue presented was *forfeiture* of counsel, while beginning its analysis of the question with a statement of the law regarding *waiver* of counsel and resolving defendant's appellate argument on that basis. *See id.* ¶¶ 1, 15–16, 18, 20–23. The Court of Appeals majority relied heavily on *State v. Curlee,* 251 N.C. App. 249 (2016), a case about waiver of counsel, and focused on whether the trial court complied with the colloquy mandated by N.C.G.S. § 15A-1242 (2021), the statute setting forth the inquiry necessary to permit a criminal defendant to waive the right to counsel without violating the state and federal constitutions, during the 18 September 2019 hearing. *Atwell*, ¶¶ 16–23. The majority then stated:

> Assuming *arguendo* that the trial court's colloquy was insufficient for the purposes of N.C.[G.S.] § 15A-1242 and that an effective waiver did not occur, we hold that defendant forfeited the right to counsel. Although there is no bright-line definition on the degree of misconduct to justify forfeiture, several of the types of conduct contemplated in [*State v. Blakeney*, 245 N.C. App. 452 (2016)] and [*State v. Simpkins*, 373 N.C. 530 (2020)] occurred in this case. Defendant repeatedly fired appointed counsel, often within several days of their appointment. Defendant continued to alternatively seek appointed counsel or additional time to hire an attorney while filing and withdrawing multiple waivers of the right to appointed counsel. Under these circumstances, *defendant's actions completely frustrated the purpose of the right to counsel and prevented the trial court from moving the case forward.* Accordingly, we hold that the trial court's finding that defendant forfeited the right to appointed counsel was warranted.

*Id.* ¶ 24 (second emphasis added).

¶ 12     One member of the Court of Appeals panel dissented from the portion of the majority's opinion which addressed defendant's right to counsel. *Id.* ¶ 26 (Jackson, J., dissenting). The dissenting judge began by addressing the issue of waiver of counsel, noting that "[n]either the trial court, nor Judge William A. Wood—who presided over a pretrial hearing on 18 September 2019—completed the colloquy required by [N.C.G.S.] § 15A-1242. Instead, Judge Wood concluded in a 20 September 2019 order that [d]efendant had forfeited the right to counsel." *Id.* ¶ 28 (Jackson, J., dissenting). The dissenting judge went on to opine that the majority of the Court of Appeals had erred in relying on *Curlee*, not only because the statutory waiver colloquy was not completed, but also because defendant had not expressed a desire to proceed without appointed counsel. *Id.* ¶ 34 (Jackson, J., dissenting).

¶ 13     As to forfeiture, the dissent stated:

> The forfeiture conclusion in Judge Wood's order does not meet the *Simpkins* standard. Defendant's conduct, like Mr. Simpkins's conduct, "while probably highly frustrating, was not so egregious that it frustrated the purposes of the right to counsel itself." *Simpkins*, 373 N.C. at 539 . . . . Nothing in the record indicates how many times the State continued the case or was not ready to proceed. In fact, the State waited almost six months from charging [d]efendant to secure an indictment. Further, nothing in the record indicates that any of the lawyers who had previously represented [d]efendant withdrew because [d]efendant was refusing to *participate* in preparing a defense. We also do not know why several of the attorneys withdrew, other than one having a conflict with another client according to

[d]efendant. Instead, to the extent it discloses any information on the subject, the record tends to show that [d]efendant had differences with her prior lawyers related to the preparation of her defense and defense strategy. For example, her differences with her first lawyer appear to have been related to a jurisdictional argument she raised in a pro se motion filed on 8 May 2018 regarding the subject matter jurisdiction of Union County Superior Court over a crime she committed in Tennessee while residing in Tennessee—an argument that does not appear to have ever been addressed below and is not patently frivolous.

*Id.* ¶ 37 (Jackson, J., dissenting).

On 15 July 2021, defendant filed a notice of appeal based upon the dissent pursuant to N.C.G.S. § 7A-30(2) (2021). In her arguments to this Court, defendant contended that the Court of Appeals erred in holding that defendant waived her right to counsel or alternatively forfeited her right to counsel. We agree, and thus we reverse in part the decision of the Court of Appeals.

## III.    Analysis

This Court has stated:

"The right to assistance of counsel is guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Sections 19 and 23 of the Constitution of North Carolina." *State v. McNeill*, 371 N.C. 198, 217 (2018) (quoting *State v. Sneed*, 284 N.C. 606, 611 (1974)). The right to counsel in criminal proceedings is not only guaranteed but is considered to be "fundamental in character." *Powell v. Alabama*, 287 U.S. 45, 70 (1932) (citations omitted).

*State v. Harvin*, 2022-NCSC-111, ¶ 29 (extraneity omitted). This fundamental

constitutional right may, however, be surrendered at the choice of a defendant or lost as a result of serious obstruction or misconduct of the defendant. *Id.* ¶¶ 29–32.

**A. Waiver of Counsel**

"One of the methods by which a criminal defendant may *surrender* the right to assistance of counsel is through *voluntary* waiver." *Id.* ¶ 30 (emphases added); *see also* N.C.G.S. § 15A-1242 (2021) ("A defendant may be permitted *at his election* to proceed in the trial of his case without the assistance of counsel . . . .") (emphasis added)); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("A waiver is ordinarily an *intentional* relinquishment or abandonment of a known right or privilege.") (emphasis added)), *overruled on other grounds* by *Edwards v. Arizona*, 451 U.S. 477 (1981). Thus, for a waiver of counsel to be constitutional and comply with our state's statutory requirements, a defendant must, as an initial point, *seek to proceed pro se*.

Here, it is plain that defendant did not seek to proceed pro se, as reflected by defendant's statements that she had been unsuccessful in obtaining private counsel, lacked the money to obtain private counsel, wanted court-appointed counsel, and understood that the trial court was denying her request and right to court-appointed counsel. First, the triggering act for invoking waiver of counsel is not present. While it is undisputed that defendant signed at least four waiver of counsel forms between

April 2018 and August 2019,[2] at the start of the 18 September 2019 hearing when Judge Wood asked defendant what she was "going to do about a lawyer," defendant clearly expressed her desire to be appointed counsel, stating "I can't afford to get a lawyer and still pay my rent and the living expenses. I thought [a private lawyer] would take payments from me, but they won't. So at this time I would like to get another court appointed attorney." The trial court then reviewed defendant's history of being appointed counsel and waiving counsel at which point defendant attempted to explain the reasons why she had parted ways with some court-appointed attorneys and at least one private lawyer. Despite defendant's express request for appointment of counsel, after the State expressed a desire to "get the case moving," the trial court informed defendant, "I'm going to put an order in the file basically saying you waived your right to have an attorney. If you would like to hire your own attorney, that would be fine . . . ." The trial court went on to discuss its belief that defendant was employing delay tactics in regard to her legal representation. Despite the trial court's use of the concept of waiver, it is plain that defendant did not wish to waive counsel, and the trial court's failure to conduct the statutory colloquy, along with the trial court's reference to "a delay tactic," suggests that the trial court was either confused about the distinction between waiver and forfeiture of counsel or that the trial court

---

[2] Presumably prior to each waiver of counsel form being signed, the trial court engaged in the colloquy required by N.C.G.S. § 15A-1242 (2021), but the transcripts of those pretrial hearings are not part of the record on appeal.

suffered a *lapsus linguae* in stating it would enter an order regarding waiver of counsel. Defendant stated that she understood that the trial court "said no" to appointing counsel to her and had "denied [her] a court appointed attorney."

¶ 18 We emphasize again that waiver of counsel is a *voluntary decision* by a defendant and that where a defendant seeks but is denied appointed counsel, a waiver analysis upon appeal is both unnecessary and inappropriate. In its order filed on 20 September 2019, the trial court decreed that "defendant, by her own flagrant, dilatory conduct has forfeited or *effectively waived* her right to be represented by counsel in this matter and at this time proceeds pro se." (Emphasis added.) Given the requirements set forth by the General Assembly, there is no "effective" waiver of this constitutional right. If a criminal defendant expresses the desire to proceed pro se, the trial court must engage in the statutory colloquy. Here, the trial court stated that defendant could still retain private counsel to represent her but emphasized that the matter was set for trial on 2 December 2019 and that "defendant shall proceed at that time with or without counsel." No waiver of counsel form from the 18 September 2019 hearing appears in the record on appeal and nothing in the hearing transcript indicates that the trial court completed the colloquy required by N.C.G.S. § 15A-1242.

¶ 19 Given that in this case defendant expressly stated that she wanted court-appointed counsel and did not want to proceed pro se, the Court of Appeals' discussion of the trial court's failure to complete the statutory colloquy regarding waiver of

counsel was not a relevant point of analysis. The assumption of the Court of Appeals majority that defendant had waived her right to counsel is thus clearly erroneous, and the analysis of the dissenting member of the lower appellate court panel regarding whether the trial court completed the required colloquy is likewise inapposite. We encourage both trial and appellate courts to begin any waiver analysis by carefully considering whether the defendant in question has expressed a clear desire to forgo the constitutional right to counsel and proceed pro se.

## B. Forfeiture of Counsel

Turning to the issue which is appropriately set for appellate review—whether defendant *forfeited* her right to counsel, we conclude that defendant did not engage in the level of misconduct which may permit a trial court to compel a criminal defendant to proceed to trial without counsel, and the Court of Appeals majority erred in concluding otherwise.

Forfeiture of the right to counsel is not an express choice to proceed pro se, but rather is a loss of the right to counsel which is imposed as a result of a defendant's "egregious misconduct." *Harvin*, ¶¶ 32–33 (quoting *State v. Simpkins*, 373 N.C. 530, 535 (2020)). Such misconduct may take the form of "a criminal defendant's display of aggressive, profane, or threatening behavior," *id.* ¶ 34, but a forfeiture of the right to counsel can also result where a defendant remains polite and apparently cooperative if the defendant's "obstreperous actions" are so severe as to impair the vindication of

the goals of according criminal defendants a right to counsel or which operate to completely prevent a trial court from proceeding in the case, *id.* ¶ 35; *see also Simpkins*, 373 N.C. at 536 (holding that a determination of forfeiture is appropriate where a "defendant's actions totally undermine the purposes of the right itself by making representation impossible and seeking to prevent a trial from happening at all"). Examples of such obstreperous actions include, *inter alia*, a defendant's " 'refus[al] to obtain counsel after multiple opportunities to do so . . . or [the] continual hir[ing] and fir[ing of] counsel and significantly delay[ing] the proceedings.' " *Harvin*, ¶ 35 (alterations in original) (quoting *Simpkins*, 373 N.C. at 538). Yet, even if a "[defendant]'s conduct [is] highly frustrating," forfeiture is not constitutional where any difficulties or delays are "not so egregious that [they] frustrated the purposes of the right to counsel itself." *Simpkins*, 373 N.C. at 539; *see also Harvin*, ¶ 38.

¶ 22        Here, the record on appeal does not reveal that defendant's behavior rose to the level of egregious misconduct which could justify the trial court's determination that she had involuntarily surrendered her constitutional right to the assistance of counsel as she proceeded to trial. Defendant never engaged in "aggressive, profane, or threatening behavior," *Harvin*, ¶ 34, or "show[ed] any contempt for the trial court's authority," *id.* ¶ 39. Instead, the transcript of the 18 September 2019 pretrial hearing reveals that the trial court was focused upon its perception that defendant had been appointed and had dismissed multiple attorneys to the effect that defendant was

delaying the proceedings, as exemplified by its statements identifying defendant's "attorney situation" as the primary basis for its concern at the start of the inquiry which ultimately resulted in the trial court's forfeiture decision, and by its question to defendant regarding her legal representation: "Don't you think it's gone on long enough?" After defendant explained that she could not afford an attorney at that time, the trial court stated: "I'm going to put an order in the file basically saying you waived your right to have an attorney. If you would like to hire your own attorney, that will be fine, but . . . *it appears to me that your process in moving this case along has been nothing more than to see how long you can delay it until it goes away*. The way you've behaved appears to be nothing more than a delay tactic." (Emphasis added.) In our view, however, it is unclear whether defendant bore *any* responsibility for the lapse of time between defendant's alleged offense and the 18 September 2019 hearing or indeed whether there had actually been any "delay" in bringing defendant's case to trial.

¶ 23    A careful review of the course of the proceedings in the case at bar plainly demonstrates the trial court's misunderstanding of defendant's "attorney situation" and its erroneous attribution of blame for "delay" on defendant. In considering the history of defendant's case, the trial court identified "the date of offense,"—19 August 2017—as the beginning of defendant's "attorney situation." But although defendant was arrested on 4 September 2017 and Attorney Cloud was appointed to represent

her the next day, she was not indicted until 5 February 2018. Plainly then, to the extent that this five-month period in the course of defendant's case was a "delay," it is wholly attributable to the State, and not to defendant.

¶ 24        Defendant's first motion to remove Cloud, filed in November 2017, was never addressed by the State or in the trial court, and when she filed her second motion to remove Cloud on 12 February 2018—alleging a conflict of interest—the issue still was not resolved until an administrative session of court on 17 April 2018, when defendant signed a waiver of assigned counsel. The record on appeal does not include an order removing Cloud or any findings of fact about the alleged conflict of interest between Cloud and defendant or any other potential reason for Cloud's withdrawal. Thus, defendant cannot be said to have caused this two-month "delay."

¶ 25        On 12 June 2018, defendant filed a motion to continue, alleging that she had medical problems, that she did not have an attorney, and that a pending motion had not been heard. While this two-month time period and defendant's request for a continuance could potentially be viewed as prolonging her case, it is difficult to characterize it as having delayed the matter given that the State had not yet sought to calendar defendant's case for trial. Further, while the order appointing attorney Dwyer to represent defendant indicates that the next court date in the case was to be 17 July 2018, nothing appearing in the record suggests that any action was taken in the case until 11 September 2018 when Dwyer was allowed to withdraw from his

representation of defendant. The order removing Dwyer does not contain any findings of fact about the reasons for Dwyer's withdrawal or even whether defendant had requested Dwyer's removal. Similarly, the 11 October 2018 order permitting attorney Regan to withdraw includes no findings about the reason her withdrawal was allowed. In light of the lack of information about these withdrawals, the four months between 12 June 2018 and 11 October 2018 cannot be fairly characterized as a "delay" caused by defendant, to the extent that it even constituted a delay, given that the State had still not attempted to set the case for trial.

¶ 26    Nothing in the record suggests that defendant was seeking to delay her case during the following two months after she waived court-appointed counsel. After attorney Porter was appointed to represent defendant on 13 December 2018 and then withdrew on 31 January 2019, the trial court again made no factual findings about the circumstances which led to the withdrawal, and thus no inference that defendant was attempting to delay her case during this period is warranted. Once attorney Ballard was appointed on 31 January 2019, the State did not attempt to bring defendant to trial at any of the next eleven scheduled superior court sessions up to the date of the 19 August 2019 hearing. This nearly eight-month delay in the case is therefore plainly attributable to the State alone.

¶ 27    In defendant's 26 June 2019 motion asking that Ballard be removed, defendant avers, *inter alia*, that Ballard was unwilling to pursue a jurisdictional issue which

defendant believed had merit—namely, that any crime which had occurred took place in Tennessee and not in North Carolina—or whether defendant had notice of the trial court order prohibiting her from attempting to purchase a firearm. The record reveals that, while the ex parte DVPO and a civil summons in the matter were served upon defendant, defendant was not present at the hearing during which the trial court determined that a DVPO against defendant was warranted, and it does not appear that the subsequently filed DVPO prohibiting her from purchasing a firearm was ever served on defendant. As the protective order was later renewed, the renewed orders did not expressly contain the firearm prohibition, but only incorporated by reference the terms of the original order. Whether or not defendant's jurisdictional and notice issues would have been determined to have merit, as the dissenting judge in the Court of Appeals well noted, *Atwell*, ¶ 37 (Jackson, J., dissenting), they cannot be characterized as frivolous. Therefore, defendant's desire to have Ballard removed from her case does not appear to be obstructive or merely an attempt to delay trial, which in any event had not been calendared at the time of defendant's 26 June 2019 motion asking that Ballard be removed. Further, after defendant filed her motion to remove Ballard, neither the State nor Ballard moved to resolve the motion for almost two months, until 21 August 2019. In addition, on 21 August 2019, when defendant filed a motion to continue and alleged that she would need time to retain counsel, defendant's case was not, and never had been, calendared for trial such that

defendant's motion to continue cannot be said to have delayed her trial.

¶ 28      In sum, a close reading of the history of defendant's case reveals that over the roughly eighteen months between defendant's indictment on 5 February 2018 and the 18 September 2019 hearing during which the trial court concluded that defendant had forfeited her right to counsel, the State repeatedly allowed defendant's pending pro se motions to languish for several months before bringing them before the trial court for resolution and *did not attempt to have defendant's case calendared for trial during the eight months when defendant was represented* by Ballard, her final court-appointed attorney. Yet less than a month after Ballard was allowed to withdraw, the prosecutor represented to the trial court that

> since this case has been pending [defendant] had five different attorneys and each one had to withdraw for various reasons. So as of right now [defendant] does not have an attorney. Last time we were here last month the judge gave her until today. *We* [the State] *want to get the case moving, get it arraigned or do whatever we're going to do, but the hold up is the attorney.*

(Emphasis added.) In fact, the State had not, up until the 18 September 2019 hearing, attempted to set defendant's matter for trial.

¶ 29      After the State's above-quoted introduction of the matter, the trial court asked for defendant's "file" and took some period of time to review it. The trial court then characterized defendant as having "fired" her court-appointed attorneys and asked defendant to explain her reasons for asking that appointed counsel be removed.

Defendant explained that one, apparently private, attorney had taken four months of payments from defendant but then had "a conflict with another client"; that two unnamed attorneys "were totally going in two different ways of defense"; and that attorney Dwyer "seemed to do the best work," noting that he had "file[d] for an arraignment back in June of 2018 . . . [and] did file a motion for [d]iscovery." When the trial court asked the State about its "pleasure with this case," the State replied:

> We're ready to move forward with the case at this point. I've been ready to arraign the case. We've given her an offer previously to plead as charged and offered probation but I can't remember which attorney but they—she refused or did not want to do that. And that's fine, that's her right. *So we're at a point where I believe it just needs to be arraigned and we'll move it to a trial calendar*. And that does not stop her from still possibly retaining counsel if she chooses to do so. And where that counsel is obviously will talk to me or talk to us, our office, and just kind of take it from there. We need to get the ball rolling, get the case moving.

(Emphasis added.) The State does not appear to have been arguing that defendant had forfeited her right to counsel or asking the trial court to so hold but rather simply wanted "to get the ball rolling, get the case moving" by arraigning defendant so the matter could be moved "to a trial calendar." Nonetheless, the trial court stated to defendant that it would "put an order in the file basically saying you waived your right to have an attorney" because "with regard to the history of this case, . . . it's my opinion that you've done nothing more than try to delay this case over a period." Ironically, although the trial court then calendared defendant's trial for the week of

2 December 2019, defendant was not tried until 13 January 2020.

¶ 30         In *Harvin*, this Court considered the case of a defendant who had two court-appointed attorneys withdraw for reasons unrelated to the defendant during the first two-and-one-half years of his proceeding; later requested the withdrawal of two additional appointed counsel in a two-and-one-half month period; and then, after acting pro se for approximately four months and realizing that he could not adequately manage his first-degree murder trial, requested to be appointed counsel once again. *Harvin*, ¶¶ 43–44. Upon review, the Court opined that the defendant's behavior in requesting the removal of two counsel, seeking to proceed pro se, and then deciding that he needed the help of counsel to vindicate his rights at trial—while remaining polite, cooperative, and constructively engaged in the proceedings—was not "the type or level of obstructive and dilatory behavior which [would] allow[ ] the trial court . . . to permissibly conclude that [the] defendant had forfeited the right to counsel." *Id.* ¶ 44.

¶ 31         Here, the record likewise does not permit an inference, much less a legal conclusion, by the trial court or a reviewing court that defendant "engage[d] in the type of egregious misconduct that would permit the trial court to deprive defendant of [her] constitutional right to counsel." *See id.* ¶ 45. The majority of the time which passed between the date of defendant's indictment and the date upon which the trial court determined that defendant had forfeited her right to counsel is attributable

either to the State's actions and omissions, or to the common temporal friction which occurs in most criminal matters prior to trial. Defendant's pro se filings, along with her comments during the 18 September 2019 hearing, indicate that defendant had ongoing, nonfrivolous concerns about her case which she wished her court-appointed attorney to pursue; that she attempted to hire a private attorney to pursue her concerns when her last court-appointed counsel declined to do so; and that she wanted, but was denied, court-appointed counsel during the 18 September 2019 hearing.

¶ 32          Additionally, we emphasize again that waiver of counsel is a choice which may be elected by a defendant and where a defendant has requested the assistance of appointed counsel, the statutory waiver colloquy has no place and, upon appeal, a waiver analysis is inapposite. Further, a criminal defendant cannot "effectively waive" the constitutional right to the assistance of counsel; *where a defendant expresses the desire to proceed without counsel*, the statutory colloquy set forth by the General Assembly in N.C.G.S. § 15A-1242 *must* be completed to sustain a waiver of counsel.

## IV. Conclusion

¶ 33          The trial court erred in determining that defendant either waived or forfeited her right to counsel, and the Court of Appeals majority erred in affirming the trial court's decision to that effect. Accordingly, the decision of the Court of Appeals is

reversed, and the case is remanded to the Court of Appeals for further remand to the

trial court for defendant to receive a new trial.

REVERSED AND REMANDED.

Chief Justice NEWBY dissenting.

¶ 34    This case concerns the trial court's authority to maintain the dignity of trial court proceedings and administer justice without delay. Though a criminal defendant has a constitutional right to counsel, that right may be lost. Here, on four separate occasions, defendant expressly declared in writing that she "freely, voluntarily and knowingly" waived her right to appointed counsel. Additionally, she relinquished five different appointed attorneys and moved to continue her case four times to obtain private counsel, which she failed to do. The trial court had adequate evidence to support its findings that, by her actions, defendant demonstrated her intent to delay trial proceedings, thus forfeiting her right to counsel. Nonetheless, the majority improperly discounts facts found by the trial court, assumes facts from an undeveloped record, makes its own findings, and ultimately substitutes its judgment for that of the trial court. Moreover, the majority ignores defendant's delay tactics and instead places blame on the State. Because the trial court did not err in determining that defendant acted with the intent to delay the trial, ruling that the matter should not be further delayed, its decision should be upheld. I respectfully dissent.

¶ 35    On 4 September 2017, defendant was arrested for Possessing or Attempting to Possess a Firearm in Violation of a Domestic Protective Order. The next day, defendant completed an affidavit of indigency and requested court-appointed counsel. The trial court appointed Vernon Cloud to represent her on the same day.

¶ 36        On 6 November 2017, only two months after the trial court appointed Cloud, defendant filed a pro se motion to have the court remove Cloud as counsel and allow a three-to-six-month continuance for defendant to hire her own attorney. The trial court never ruled on this motion.

¶ 37        Defendant was indicted on 5 February 2018. On 12 February 2018, defendant filed a second pro se motion requesting the court to "immediately" remove Cloud as court-appointed counsel due to a "serious conflict" with him under the Americans with Disabilities Act. She again requested a continuance to obtain legal counsel. The trial court apparently never heard or ruled on this motion.

¶ 38        On 17 April 2018, defendant signed a waiver of counsel form expressly waiving her right to appointed counsel. The waiver of counsel form specifically affirmed defendant "freely, voluntarily and knowingly" waived her right to appointed counsel. By signing the form, defendant acknowledged the following:

> I freely and voluntarily declare that I have been fully informed of the charges against me, the nature of and the statutory punishment for each such charge, and the nature of the proceedings against me; that I have been advised of my right to have counsel assigned to assist me and my right to have the assistance of counsel in defending against these charges or in handling these proceedings, and that I fully understand and appreciate the consequences of my decision to waive the right to assigned counsel and the right to assistance of counsel.

¶ 39        The next month, on 8 May 2018, defendant filed a pro se motion to dismiss the case for lack of subject matter jurisdiction and alleged she was a "disabled Tuscarora

Native American." The trial court never heard or ruled on this motion. On 15 May 2018, seven days after filing her motion to dismiss, defendant signed a second waiver of counsel form again declaring that she "freely, voluntarily and knowingly" waived her right to appointed counsel.

¶ 40        Less than one month later, on 12 June 2018, defendant filed a pro se motion requesting another continuance because she still did not have an attorney and claimed she was experiencing medical issues. The same day, the trial court appointed Peter Dwyer as defendant's second court-appointed counsel.

¶ 41        On 24 July 2018, defendant filed a pro se motion requesting a change of venue. Less than one month later, on 13 August 2018, defendant filed a pro se motion to dismiss for improper venue due to "pretrial publication, interest[s] of justice, improper venue, [and] previous problems with judges, lawyers, authorities."

¶ 42        On 11 September 2018, Dwyer withdrew as appointed counsel for reasons not specified in the record. The court appointed Tracy Regan as defendant's third court-appointed counsel. On 11 October 2018, only one month after the trial court appointed Regan as counsel, Regan withdrew for reasons not specified in the record. The same day, defendant signed a third waiver of counsel form declaring she "freely, voluntarily and knowingly" waived her right to appointed counsel and acknowledging that she understood and appreciated the consequences of waiver.

¶ 43        On 13 December 2018, defendant filed another affidavit of indigency and

requested court-appointed counsel. The court appointed Tiffany Porter to serve as defendant's fourth court-appointed counsel. The next month, on 31 January 2019, Porter withdrew for reasons not specified in the record, and the court appointed Courtney Ballard to serve as defendant's fifth and final court-appointed counsel.

¶ 44 Five months after the court appointed Ballard as defendant's counsel, defendant filed a pro se motion on 26 June 2019 requesting that the court "immediately remove Courtney Ballard from [her] case" and hand the case file over to defendant. In her motion, defendant alleged "serious judicial misconduct" because "Courtney Ballard knows I was not served [with] notice of hearing . . . yet [the trial court] held [a] hearing anyway[.]"

¶ 45 Less than two months later, on 21 August 2019, defendant filed another pro se motion requesting a six-month continuance to "obtain competent legal counsel after removal of [   ] Courtney Ballard." On the same day, the court granted defendant's motion to remove Ballard as counsel, and defendant signed a fourth waiver of counsel form expressly affirming that she "freely, voluntarily and knowingly" waived her right to appointed counsel.

¶ 46 On 18 September 2019, the trial court held a hearing to determine the status of defendant's case. The prosecutor explained that defendant already had five different appointed attorneys in the past two years, and the previous judge had recently given defendant one month to obtain private counsel. When asked if she

planned to hire counsel, defendant claimed she could not afford it. The State, concerned with the delay of the case, noted that it was ready to move forward with trial. The trial court concluded as follows:

> The Court: Well, what I'm going to do is I'm going to put an order in the file basically saying you waived your right to have an attorney. If you would like to hire your own attorney, that will be fine, but based on these – the history of this file, it appears to me that your process in moving this case along has been nothing more than to see how long you can delay it until it goes away. The way you've behaved appears to be nothing more than a delay tactic and that's what I'm going to put an order in the file and I'm going to make specific findings as to everything I just told you and to some other things that are in the file. I'm going to let the prosecutor arraign you and set this case for trial. Do you understand that?
>
> [Defendant]: Yes.
>
> The Court: Now, that doesn't preclude you from hiring your own attorney. You can hire your own attorney but you're going to have to do that and have your attorney ready by the time the prosecutor has this case on the trial calendar. Additionally, if you don't hire an attorney, you're going to be responsible for representing yourself. Do you know what that means?
>
> [Defendant]: Representing myself.
>
> The Court: Yes.
>
> [Defendant]: It means representing myself.
>
> The Court: It does. It means you're going to have to negotiate any plea deal if there is one with the prosecutor. You're going to have to handle all the [d]iscovery in this case. If there is a jury trial you're going to have to select a jury and keep up with any motions and try the case just as

> if you were an attorney and be held to the same standard
> as an attorney. You're not going to get legal advice from me
> or whoever the judge is. Do you understand that?
>
> . . . .
>
> [Defendant]: You're giving me no choice. I mean, I asked
> for another court[-]appointed attorney and you said no, so
>
> The Court: You've had choice after choice after choice.
> You've been given a court[-]appointed attorney on three
> occasions, which is two more than you usually get.

¶ 47    In its order, the trial court found that "[defendant's] conduct in this matter is nothing more than a delay tactic and an attempt to do whatever she can to avoid bringing this matter to a conclusion." The trial court also found that defendant "has caused at least [two] of her appointed attorneys to be removed from her case because of her of [sic] own conduct or a generally unreasonable expectation that she has for her case." The trial court then ordered that defendant "forfeited or effectively waived her right to be represented by counsel in this matter and at this time proceeds pro se" as a result of "her own flagrant, dilatory conduct."

¶ 48    Four months later, defendant's trial began on 13 January 2020. After the jury was impaneled, defendant left and did not return for the remainder of the trial, alleging medical issues and car problems. The jury subsequently found defendant guilty. Defendant was present for her sentencing hearing, at which the trial court sentenced her to five to fifteen months in prison. She gave notice of appeal in open court.

¶ 49      On appeal defendant challenged the trial court's order finding that she had waived or forfeited her right to counsel. A divided panel of the Court of Appeals affirmed, holding that the trial court complied with the requirements for an effective waiver. *State v. Atwell*, 278 N.C. App. 84, 2021-NCCOA-271, ¶ 23. Relying on its decision in *State v. Curlee*, 251 N.C. App. 249, 795 S.E.2d 266 (2016), the Court of Appeals determined that the trial court's colloquy with defendant was sufficient to inform her of the consequences of proceeding pro se and met the requirements under N.C.G.S. § 15A-1242. *Atwell,* ¶¶ 22–23 (citing *Curlee*, 251 N.C. App. at 253, 795 S.E.2d at 270 (determining that when a defendant waives the right to counsel and the case is continued to obtain private counsel, the trial court may inform the defendant that he or she "will be required to proceed to trial without the assistance of counsel, *provided that* the trial court informs the defendant of the consequences of proceeding *pro se* and conducts the inquiry required by N.C.[G.S.] § 15A-1242.")).

¶ 50      Moreover, the Court of Appeals held that, even if there was not a valid waiver of appointed counsel, defendant still forfeited the right under this Court's standard in *State v. Simpkins*, 373 N.C. 530, 838 S.E.2d 439 (2020). *Atwell*, ¶ 23; *see Simpkins*, 373 N.C. at 541, 838 S.E.2d at 449 (holding a defendant forfeits the right to counsel when he or she engages in "egregious dilatory or abusive conduct . . . which undermines the purposes of the right to counsel"). The Court of Appeals concluded that defendant's conduct in removing court-appointed attorneys, filing waiver of

counsel forms, and seeking continuances to hire private counsel amounted to egregious misconduct intended to delay proceedings. *Atwell*, ¶ 24.

¶ 51      The dissent would have held that, despite numerous written waivers of court-appointed counsel, because defendant explicitly requested court-appointed counsel at her hearing on 18 September 2019, she did not voluntarily waive the right to appointed counsel. *Id.* ¶¶ 32–35 (Jackson, J., concurring in part and dissenting in part). Further, the dissent disagreed with the majority that defendant's conduct was so egregious to warrant forfeiture under the *Simpkins* standard because, *inter alia*, the record lacked evidence of three attorneys' reasoning for withdrawal. *Id.* ¶ 37. Defendant gave notice of appeal to this Court.

¶ 52      This Court reviews a trial court's findings of fact to determine whether they are "supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). While "[a]n appellate court reviews conclusions of law pertaining to a constitutional matter de novo," *State v. Bowditch*, 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010) (citing *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008)), each case presents unique facts which must be assessed by the trial court. Only the trial court could truly understand the defendant's actions to know when to protect the court proceedings from undue disruption and delay. Moreover, trial courts have a "legitimate interest

in guarding against manipulation and delay." *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995). Given this legitimate interest, a trial court must be afforded discretion to ensure legal proceedings are respected by all, which in turn enables the court to preside over orderly and just proceedings.

¶ 53        A criminal defendant's right to be represented by counsel is well-established, *State v. Bullock*, 316 N.C. 180, 185, 340 S.E.2d 106, 108 (1986), however, a defendant may expressly waive the right to counsel or forfeit it by his or her conduct. *See State v. Thomas,* 331 N.C. 671, 673, 417 S.E.2d 473, 475 (1992); *Simpkins*, 373 N.C. at 541, 838 S.E.2d at 449. The majority unduly chastises the trial court for blurring the distinction between waiver and forfeiture. Several waivers of counsel, however, can be an important consideration in finding forfeiture. A defendant who causes undue delay by filing multiple waiver of counsel forms, and then later changing his or her mind, can support a finding of forfeiture.

¶ 54        A valid waiver of the right to counsel must meet constitutional and statutory standards. *Thomas*, 331 N.C. at 673, 417 S.E.2d at 475. First, a defendant must expressly waive the right to counsel "clearly and unequivocally." *Id.* at 673–74, 417 S.E.2d at 475 (quoting *State v. McGuire*, 297 N.C. 69, 81, 254 S.E.2d 165, 173, *cert. denied*, 444 U.S. 943, 100 S. Ct. 300 (1979)). Second, once waiver is clearly expressed, the trial court "must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel." *Id.* at 674, 417

S.E.2d at 476 (citing *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2540 (1975)). To do so, the trial court must meet the requirements of N.C.G.S. § 15A-1242, which states:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C.G.S. § 15A-1242 (2021). As a further precaution, a "trial court must obtain a written waiver of the right to counsel." *Thomas*, 331 N.C. at 675, 417 S.E.2d at 476 (citing N.C.G.S. § 7A-457 (1989)).

A defendant may also forfeit the right to appointed counsel "in situations evincing egregious misconduct." *Simpkins*, 373 N.C. at 535, 838 S.E.2d at 446. This Court stated in *Simpkins* that a defendant may forfeit the right to counsel when he frustrates the purpose of the right to appointed counsel and obstructs or delays proceedings. *Id*. at 536, 838 S.E.2d at 446. Notably, a defendant obstructs proceedings if he "refuses to obtain counsel after multiple opportunities to do so . . . or continually hires and fires counsel and significantly delays the proceedings." *Id*. at 538, 838

S.E.2d at 447.

¶ 56 Here defendant clearly and unequivocally expressed her desire to waive her right to appointed counsel when she signed four separate waiver of counsel forms. Defendant signed the fourth waiver form less than one month before the hearing during which the trial court found she had waived or forfeited her right to counsel. Moreover, the trial court complied with the requirements of N.C.G.S. § 15A-1242 to ensure defendant understood the consequences of continuing to trial without appointed counsel. The trial court specifically advised defendant that she could still hire her own attorney and explained that defendant would have to handle discovery, select a jury, "and try the case just as if [she] were an attorney." This colloquy satisfied the requirements under N.C.G.S. § 15A-1242. Thus, defendant knowingly and voluntarily waived her right to court-appointed counsel. Further, the trial court was aware that even during the time defendant was represented by her five different appointed attorneys, defendant made multiple pro se filings. Her filings clearly indicate that she was familiar with her legal proceeding and that she knew the difference between proceeding with or without counsel. The trial court rightly found that defendant's pro se filings were generally designed to delay the court proceedings.

¶ 57 In addition to affirmatively waiving her right to counsel, defendant also forfeited that right by her conduct. In *Simpkins*, the trial court found that the defendant waived his right to counsel when he objected to the trial court's jurisdiction

and "stated that he 'would like counsel that's not paid for by the State of North Carolina.' " 373 N.C. at 532, 838 S.E.2d at 444. The defendant appealed, arguing that the trial court failed to inquire into the defendant's decision to proceed pro se. *Id.* at 533, 838 S.E.2d at 444. The State argued at the Court of Appeals that the defendant forfeited, rather than waived, his right to counsel by his own conduct. *Id.* The Court of Appeals reversed the trial court, holding that the defendant's conduct was not serious enough to result in forfeiture. *Id.* This Court affirmed and agreed that the standard for forfeiture required "egregious misconduct." *Id.* at 535, 838 S.E.2d at 446. The majority reasoned that while the defendant's conduct was "highly frustrating," the record did not show that his conduct was rude or disrespectful to constitute egregious misconduct. *Id.* at 539, 838 S.E.2d at 448. This Court noted, however, that the trial court did not make specific findings of fact supporting a conclusion that the defendant forfeited or waived his right to counsel. *Id.* at 533–34 n.3, 838 S.E.2d at 444–45 n.3. If it had done so, "then those findings would be entitled to deference." *Id.*

¶ 58      Here, unlike in *Simpkins*, the trial court made specific findings of fact in its order that defendant waived or forfeited her right to counsel. The trial court found that defendant filed four waiver of counsel forms, relinquished five different attorneys within two years, and filed four pro se motions to continue to obtain private counsel. When defendant failed to obtain private counsel, she sought to have counsel appointed for her for the sixth time. Defendant made multiple pro se filings,

regardless of whether she was represented by counsel. After reviewing defendant's conduct, the trial court found she had effectively forfeited her right to appointed counsel. These findings are supported by competent evidence, and this Court should defer to them.

¶ 59        As in this case, this Court recently failed to afford deference to the trial court's findings of fact in *State v. Harvin*, 2022-NCSC-111. There the defendant was appointed four attorneys in less than three years, two of whom withdrew at the defendant's request. *Harvin*, ¶¶ 4–7. Three weeks before his trial date, the defendant requested a continuance to have more time to prepare for his case, but the trial court denied his request. *Id.* ¶¶ 13–14. On the day of trial, the defendant asserted an ineffective assistance of counsel claim against his standby counsel. *Id.* ¶ 15. After informing the defendant that he could not assert an ineffective assistance of counsel claim because he had no counsel, the trial court conducted the colloquy under N.C.G.S. § 15A-1242. *Id.* ¶ 16. The defendant indicated he wished to have an attorney appointed for him. *Id.* The trial court concluded, however, that the defendant forfeited his right to counsel because he "had no good cause" to ask for an attorney on the day of his trial, and his willful actions "obstructed and delayed these court proceedings." *Id.* ¶ 20.

¶ 60        Although this Court acknowledged "the binding nature on appeal of findings of fact if they are supported by competent evidence," the Court failed to afford

deference to the trial court's findings of fact and determined that the issue of forfeiture "must be evaluated de novo." *Id.* ¶ 42. Under the de novo standard, the Court concluded the defendant's conduct was not sufficiently egregious to meet the *Simpkins* standard. *Id.* ¶ 39. In reaching this conclusion, however, the Court determined the attorneys did not withdraw because of the defendant's delay tactics "as the trial court found," rather, "in the determination of the Court of Appeals," they withdrew because of issues regarding the defendant's defense preparation. *Id.* ¶ 41. In other words, this Court substituted its own judgment for that of the trial court rather than affording deference to the trial court's findings of fact.

¶ 61        Here, as in *Harvin*, the majority reweighs the evidence and mistakenly concludes defendant bears no responsibility for the significant delay in trial court proceedings. Instead, the majority places blame solely on the State because it never calendared the case for trial. The majority fails to consider, however, that the State did not calendar the case for trial because it had to wait for defendant to hire private counsel after she requested three-to-sixth month continuances to do so on four separate occasions. Moreover, the majority renders meaningless defendant's four waiver of counsel forms. According to the majority, defendant did not waive her right to appointed counsel because she did not file a waiver of counsel form at the 18 September 2019 hearing. By the majority's reasoning, an effective withdrawal of waiver occurs when, despite waiving the right to appointed counsel four separate

times, defendant changes her mind at the last minute and requests appointed counsel.

¶ 62          Affording the deference due to the trial court's findings of fact, the trial court's determination that defendant waived or, in the alternative, forfeited her right to counsel is supported by competent evidence in the record. The majority here, however, substitutes its own judgment for that of the trial court and instead shifts responsibility to the State. In doing so, the majority effectively requires a separate hearing to determine the reasons for each court-appointed attorney's withdrawal. Ultimately, the decision today infringes upon the trial court's authority to manage its docket and administer justice without delay. Because defendant waived and forfeited her right to counsel by delaying court proceedings, I respectfully dissent.

Justices BERGER and BARRINGER join in this dissenting opinion.