An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-1044

Filed 3 September 2025

Forsyth County, Nos. 20 CRS 058785-330, 20 CRS 002069-330, 23 CRS 000502-330

STATE OF NORTH CAROLINA

v.

RAYVON MARQUIS FLOWERS, Defendant.

Appeal by Defendant from judgment entered 1 July 2024 by Judge Martin B. McGee in Forsyth County Superior Court. Heard in the Court of Appeals 22 May 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Marc Bernstein, for the State.*

*Attorney Marilyn G. Ozer, for Defendant–Appellant.*

MURRY, Judge.

Rayvon M. Flowers (Defendant) appeals the trial court's judgment finding him guilty of second-degree murder and possession of firearm by a felon. Defendant argues that multiple judges (collectively, "the trial court") erred (1) by allowing him to waive counsel at critical trial stages without being informed of the mandatory punishment for second-degree murder; and (2) by denying his requested jury

instruction on the lesser-included offense of involuntary manslaughter. For the reasons below, this Court holds that the trial court did not err as to either issue.

## I. Background

In May 2020, Kelvin Bonner (the victim) lived at a boardinghouse located at 177 Park Circle in Winston-Salem, North Carolina At about 6:15 AM on 27 May 2020, the victim walked outside to sell marijuana to Defendant. The victim's roommate soon heard a "pop" a few minutes later and saw a car driving "up the hill" away from the boardinghouse. Their upstairs neighbor also heard a gunshot and the "revving of an engine," at which point she called 911 at 6:30 AM. An investigating detective arrived at the scene roughly 30 minutes later to find "one distinct . . . gunshot wound to [the victim's] right eye area." The medical examiner, who would later testify as an expert in forensic pathology at trial, found that the bullet entered the right side of the victim's face, "right below the right eye, or on the eyelid," and went through his eye and brain front to back "from the right side to the left, and upwards and backwards." He ultimately determined that the victim's cause of death was "a gunshot wound to the head," the gunshot being "the only thing that struck" him. Between the pretrial hearings and the trial itself, though, Defendant sought to waive his constitutional right to counsel on four separate occasions: 9 June 2022 with Judge L. Todd Burke (first waiver), 30 May 2023 with Judge Richard S. Gottlieb (second waiver), 7 July 2023 with an unspecified certification (third waiver), and 6 June 2024 with Judge Stephanie L. Reese (fourth waiver). It asked whether he "kn[e]w how to navigate the

trial so that" he could "convey[ ] to a jury . . . [his] legal rights in court before a judge." Defendant responded that he "kn[e]w [he was] innocent" and that "God will work it out." The trial court then allowed counsel to withdraw and explained to Defendant the likely consequences:

> COURT: You have three choices . . . . You can represent yourself, hire your own lawyer[,] or you can ask the Court to appoint a lawyer to represent you. What do you want to do about . . . legal counsel?
>
> DEFENDANT: Represent myself.
>
> COURT: All right. We're going to have you sign a waiver that you're waiving all counsel.

The trial court allowed this in part because Defendant otherwise forced "a conflict of interest for [his] attorney" at the time by "threaten[ing] to report . . . [him] to the State Bar" for reasons left unclear in the record. After Defendant "affirm[ed]" his execution of the waiver, the trial court appointed standby counsel "as an assistant" "able to advise [him] about some of the legal procedure." The trial court queried Defendant about the consequences of representing himself, asking him whether he could conduct his own defense without the help of counsel, and explained Defendant's options regarding the assistance of counsel. The State also confirmed that its extant plea agreement at this point was to not "pursue additional indictments for possession of firearm by a convicted felon" and for "habitual[-]felon" status in exchange for a guilty plea of second-degree murder. At this hearing, the trial court reviewed Defendant's charge of second-degree murder relative to the new plea deal:

COURT: Okay. I want to review with you in open court that . . . [*y*]*ou're facing a mandatory sentence of life without parole.* Do you understand that?

DEFENDANT: Yes, sir.

. . . .

COURT: . . . [A]s a prior record level five you're looking . . . in the presumptive range[,] a minimum range of 89 to 111 months, with a corresponding maximum . . . of 146 months. Do you understand that?

DEFENDANT: Yes, sir.

COURT: Where you would be sentenced in that range would be in the discretion of the judge presiding if you accepted the plea arrangement. Do you understand that?

DEFENDANT: Yes, sir.

COURT: Having had that explanation, do you wish to discuss the plea offer with . . . your standby counsel?

DEFENDANT: No.

COURT: How would you like to proceed with the plea offer made to you? . . . [Do y]ou want to reject it?

DEFENDANT: Yes, sir.

(Emphasis added.) Based on the recitation of the updated plea agreement and

the subsequent colloquy, the trial court then stated for the record that:

The Court engaged in this conversation in open court with Defendant *with backup counsel present*, that Defendant was given an *opportunity to consult with standby counsel*, that the Court reviewed the potential range for discretionary sentence if Defendant accepted or rejected the plea offer and proceeds on the B1 felony he is facing. He indicates he *understands, had an opportunity to consider, and rejects* the plea offer made to him.

(Quotation modified; emphases added.) The State then confirmed that it would "proceed[ ] with indictment on possession of firearm by felon, as well as habitual felon," to which Defendant assented in open court. Having certified the final waiver, the case proceeded to a jury trial about three weeks later on 24 June 2024. Before the jury entered on the morning of the trial, the trial court reminded Defendant that the maximum punishment for second-degree murder with aggravating factors was life imprisonment without parole.

Having waived the assistance of counsel, Defendant testified in his own defense at trial that he arrived at the victim's residence that morning to buy marijuana. The victim came outside "about a minute later" to Defendant's car, where Defendant gave him a $20 bill for the marijuana. The victim then went to his own car and started "moving around in" it. After about a minute, Defendant approached him and asked for the marijuana. When the victim said he did not have any, Defendant demanded his money back, but the victim refused. Defendant then grabbed the victim's hand holding the money, and the two "started wrestling and tussling" for less than a minute. The victim then tried to "shove [Defendant] and grab the gun." Defendant testified that the gun went off "[a]s soon as [the victim] touched it" and that the victim was "grabbing" the gun and "picking it up" when it discharged. He "sped off" and threw the gun "in a manhole" about two to three minutes later because he "was scared" and didn't know if the victim was "going to grab [the gun] and start shooting." On cross-examination, Defendant asserted that the shooting "was an

- 5 -

accident" and that the victim shot himself. On 1 July 2024, the jury found Defendant guilty of second-degree murder and possession of firearm by a felon. Defendant also pleaded guilty to aggravating factors and to attaining the status of habitual felon. Defendant timely appealed both his multiple waivers of counsel and the denial of this jury instruction. We review *de novo* any challenge to a purported waiver of counsel or a rejection of proposed jury instructions. *State v. Frederick*, 222 N.C. App. 576, 581 (2012) (waiver of counsel); *State v. Osorio*, 196 N.C. App. 458, 466 (2009) (jury instructions). For the following reasons, this Court holds the trial court did not err on either issue.

## A. Waiver of Counsel

First, Defendant argues that the trial court erred by allowing him to waive counsel at critical trial stages without informing him of possible aggravating factors to any mandatory punishment for second-degree murder. Under both the Federal and State Constitutions, a criminal defendant has the "right to . . . have counsel for defense." N.C. Const. art. I, § 23; *see* U.S. Const. amend. 6, cl. 7. But we have "long recognized the state constitutional right of a criminal defendant 'to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes.' " *State v. Moore*, 362 N.C. 319, 321 (2008) (quoting *State v. Thomas*, 331 N.C. 671, 673 (1992)). A defendant must "clearly and unequivocally" express to the trial court his "waiver of the right to counsel . . . to proceed *pro se*." *State v. McGuire*, 297 N.C. 69, 81 (1979). To ensure that the defendant "knowing[ly] and intelligent[ly]

waive[s] . . . his constitutional right to represent himself," *State v. Stanback*, 137 N.C. App. 583, 585 (2000) (quotation omitted), the trial court must conduct a "thorough inquiry" that he:

> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C.G.S. § 15A-1242 (2023). So long as the record "reflect[s] . . . the trial court['s] . . . satisf[action]" with "each of the[se] three inquiries," *State v. Lindsey*, 271 N.C. App. 118, 127 (2020), they "satisf[y] constitutional requirements." *Thomas*, 331 N.C. at 674. But a trial court may also invalidate a waiver if it "fail[s] to advise a defendant of any of these requirements." *Lindsey*, 271 N.C. App. at 127.

A trial court must document this satisfaction by certifying the defendant's "written, signed waiver," the execution of which we rebuttably "presume[ ] to . . . be[ ] knowing, intelligent, and voluntary." *State v. Warren*, 82 N.C. App. 84, 88–89 (1986). Once executed, the waiver stands "until the proceedings . . . terminate[ ] or until the defendant makes known to the [trial] court . . . h[is] desire[ ] to withdraw [it]." *State v. Hyatt*, 132 N.C. App. 697, 700 (1999). The defendant alone bears the "burden of showing [his] change in . . . desire . . . for counsel." *Id.* (quotation omitted).

Here, the record documents four distinct waivers of counsel across a two-year period. It is true that the third waiver was not certified by a particular judge. But

each of the other three waivers—including the subsequent *fourth* waiver—evidences the trial court's certification that Defendant was "fully informed of the charges against him," the "nature of *and the statutory punishment for* each charge," the "nature of the proceedings against" him, and his "right to have counsel assigned to assist" him. (Emphasis added.) In this same final certification, Defendant again confirmed that he "fully underst[oo]d and appreciate[d] the consequences of [his] decision to waive [his] right to assigned counsel." Thus, Defendant bears the burden of rebutting our presumption that he knowing[ly], intelligent[ly], and voluntar[il]y" waived his constitutional right to counsel. *State v. Wall*, 184 N.C. App. 280, 283 (2007) (quotation omitted).

## B. Thorough Inquiries

Defendant claims that the trial court did not hold a proper colloquy before granting his motion to waive counsel and that it "had him sign a waiver without determining whether he understood the consequences of this decision, the nature of the charges[,] or the range of permissible punishments." The record must "reflect that the trial court is satisfied regarding each of the three inquiries listed in [N.C.G.S. § 15A-1242]." *Lindsey*, 271 N.C. App. at 127. Contrary to Defendant's claim, the record indicates that the trial court conducted the "thorough inquiry" required by N.C.G.S. § 15A-1242 for each of Defendant's certified waivers of counsel.

### *1. First Waiver*

The trial court conducted the statutorily required "thorough inquiry" of Defendant's self-awareness regarding the first waiver. N.C.G.S. § 15A-1242. It asked Defendant about the consequences of representing himself, whether he could conduct his own defense *pro se*, and whether he understood his options regarding any further assistance. The trial court ensured that Defendant heard the State's indictments against him and its multiple plea-agreement proposals on the table. The trial court also explained his "three choices concerning an attorney": (1) to "represent [him]self," (2) to "hire his own lawyer," or (3) to "ask the [trial c]ourt to appoint a lawyer to represent [him]." Indeed, the trial court would have risked professional sanction had it allowed this "conflict of interest" between a counsel and his client to continue at this point. N.C. Rev. R. Pro. Conduct 1.7(a) ("[A] a lawyer [can]not represent a client involv[ing] a concurrent conflict of interest[, where] the representation may be materially limited by" "the lawyer[']s" "personal interest." (ellipses omitted)). The trial court further supplemented this inquiry by appointing standby counsel to assist Defendant. *See* N.C.G.S. § 15A-1243 ("[T]he trial judge in his discretion may determine that standby counsel should be appointed to assist the defendant when called upon . . . ."). Thus, this Court holds that Judge Burke did not err in concluding that Defendant "knowingly, intelligently, and voluntarily made" the decision to execute the first waiver. *Moore*, 362 N.C. at 326.

### 2. Second Waiver

The trial court also conducted the statutorily required "thorough inquiry" of

Defendant's self-awareness regarding the second waiver. N.C.G.S. § 15A-1242. To an even greater extent than with the first waiver, the trial court here ensured that Defendant knew the "charges and proceedings and the range of permissible punishments" by informing him of the possibility of life imprisonment without parole for the second-degree murder charge and the minimum–maximum sentence range. *Id.* § 15A-1242(3); *see Lindsey*, 271 N.C. App. at 127 (mandating "specific[ ] advi[c]e [to] a defendant of the possible maximum punishment" and the "range of permissible punishments") The trial court even paused Defendant's argument on a motion to dismiss to ensure that he had the opportunity "to consult with standby counsel at all before . . . consider[ing his] arguments," which he refused. Contrary to Defendant's claim on appeal, he signed the second waiver fully informed of the range of permissible punishments for second-degree murder with aggravating factors. Thus, this Court holds that Judge Gottlieb did not err in concluding that Defendant "knowingly, intelligently, and voluntarily made" the decision to execute the second waiver. *Moore*, 362 N.C. at 326.

### 3. *Fourth Waiver*

Finally, the trial court conducted the statutorily required "thorough inquiry" of Defendant's self-awareness regarding the *fourth* waiver. N.C.G.S. § 15A-1242. Although the record does not contain an associated transcript for this particular colloquy, it does document a denial of Defendant's pretrial motion to dismiss on the grounds of failing to conduct "an inquiry . . . as to his waiver of counsel." The

contemporaneous waiver certification by the same Judge Reese who rendered the denial sufficiently raises the presumption that Defendant made a "knowing, intelligent, and voluntary" waiver. *Warren*, 82 N.C. App. at 89.

Defendant's conduct at the outset of his trial buttresses this presumption. Before the jury entered, the trial court "underst[oo]d that [he is] going to be representing [him]self." The trial court also confirmed that, "at a prior hearing[,] a judge went through all the warnings with regard to both charges," Defendant's decision "to represent [him]self in the case," and his right to "standby counsel in the matter." Defendant responded affirmatively to the trial court's "propos[al] . . . not [to] introduce Mr. Speaks as the attorney in the matter . . . and simply let [the jury] know that [he]'ll be representing [him]self." Based on what "the record indicates," *id.*, this Court holds that Judge Reese did not err in concluding that Defendant "knowingly, intelligently, and voluntarily made" the decision to execute the fourth waiver. *Moore*, 362 N.C. at 326.

Nor did Judge McGee err by relying on the previous competent waiver by Judge Reese at trial. *See Hyatt*, 132 N.C. App. at 700 (upholding executed waiver "until the proceedings . . . terminate[ ] or until the defendant makes known to [trial] court . . . h[is] desire[ ] to withdraw [it]") After confirming Defendant's desire to proceed *pro se* as detailed above, Judge McGee supplemented the previously conducted waiver inquiries by reminding Defendant that "if . . . aggravating factors are found [he could] receive life without parol." Not only that, but after the close of evidence Judge McGee

reiterated that aggravating factors could increase the maximum punishment for second-degree murder to life imprisonment without parole. For all these reasons, this Court holds that the trial court did not err in allowing Defendant to proceed *pro se*.

## C. Lesser-Included Offense Jury Instruction

Second, Defendant argues that the trial court erred by refusing his requested jury instruction on the lesser-included offense of involuntary manslaughter. A trial court must instruct a jury on a lesser-included offense "if the evidence would permit it rationally to find the defendant guilty of the lesser offense and acquit him of the greater." *State v. Millsaps*, 356 N.C. 556, 562 (2002) (citation modified). Even though trial "courts must consider the evidence in the light most favorable to [the] defendant," *State v. Debiase*, 211 N.C. App. 497, 504 (2011) (alteration in original; quotation omitted), he is "entitled to . . . a lesser-include offense submi[ssion] . . . only when there is evidence to support it." *State v. Johnson*, 317 N.C. 193, 205 (1986). "The trial court need not submit lesser degrees of a crime to the jury when the State's evidence is positive as to each and every element of the crime charged *and there is no conflicting evidence relating to any element* [*there*]*of*." *State v. Drumgold*, 297 N.C. 267, 271 (1979).

Statutory second-degree murder is "(1) the unlawful killing (2) of another human being (3) with malice, but (4) without premeditation or deliberation." *State v. Coble*, 351 N.C. 448, 449 (2000) (brackets omitted) (citing N.C.G.S. § 14-17(b) (1999)). Common law involuntary manslaughter is in relevant part (1) "the unlawful killing"

(2) "of a human being" (3) "without malice," (4) and "without premeditation and deliberation." *State v. Wrenn*, 279 N.C. 676, 682 (1971). The latter "is a lesser-included offense of" the former. *Johnson*, 317 N.C. at 205. In either case, though, the killing must "proximately result[ ] from" some specific act of the defendant. *Id.*

Here, Defendant claims that the victim shot himself, that "[i]t was an accident," and that Defendant "did not mean to harm" the victim. But his own testimony at trial does not support this. Once Defendant grabbed the victim's hand that held the money, the two "started wrestling and tussling." A gun soon fell out of the victim's right pocket and hit the ground. Defendant admitted that the gun went off "[a]s soon as [*the victim*] touched it" and that *the victim* was "grabbing" the gun and "picking it up" when it discharged. . Later on cross-examination, Defendant flatly denied "shoot[ing] him."

Defendant's express—and repeatedly emphasized—argument at trial allowed for three possible predicate "unlawful act[s] n[either] amounting to a felony nor naturally dangerous to human life," *id.*: "grab[bing] the hand where [the victim] had the money," "wrestling" on the ground, or the gun discharging itself. Defendant does not (nor could one seriously) contest the medical examiner's expert testimony establishing this latter act as the but-for and proximate cause of the victim's death. But to merit an involuntary-manslaughter instruction, the jury needed a "rational[ ]" basis, *Millsaps*, 356 N.C. at 560, upon which it could find that Defendant's specific "act proximately caused the victim's death," N.C.P.I.—Crim. 206.30A. Both at trial

and on appeal, Defendant robbed himself of this instruction by denying ever pulling the trigger in the first place. He could not justify the lesser-included instruction because he did not concede the possibility of ever actually or proximately causing the victim's death. The merit of this particular trial strategy is not for us to decide; its compliance with the law is all we can address. *See Rupert v. Rupert*, 15 N.C. App. 730, 732 (1972) ("[P]roper supervision over the argument of counsel[ ] is a matter largely within the discretion of the trial [court]."). Thus, this Court holds that the trial court did not err by denying Defendant's request for the lesser-included jury instruction.

## II. Conclusion

For the reasons discussed above, this Court holds that the trial court did not err (1) by allowing Defendant to waive his constitutional right to counsel at multiple points in the proceedings and (2) by denying his request to instruct the jury on the lesser-included offense of involuntary manslaughter.

NO ERROR.

Judges FLOOD and STADING concur.

Report per Rule 30(e).